REVISED December 30, 2008

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

December 23, 2008

Charles R. Fulbruge III
Clerk

No. 07-20236

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

SUGENTINO PERCEL; ERIC VASQUEZ,

Defendants–Appellants.

Appeal from the United States District Court
for the Southern District of Texas

Before GARWOOD, GARZA, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Sugentino Percel and Eric Vasquez, along with six other individuals, were arrested and charged with conspiracy to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846 (Count One) and with aiding and abetting the knowing and intentional possession with intent to distribute of five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii), and 18 U.S.C. § 2 (Count Two).  Percel and Vasquez appeal their convictions, arguing that (1) the district court gave erroneous jury instructions, (2) the jury lacked sufficient evidence to convict Vasquez on either count, and (3) the district court

abused its discretion in permitting testimony about a prior drug transaction involving Percel and Vasquez.  We affirm.

I

Percel's and Vasquez's arrests resulted from a surveillance operation conducted by agents of the Drug Enforcement Agency (DEA).  That operation began with surveillance of two addresses in Harris County, Texas—7430 Weatherhill and 7622 Lima.  Agents observed a meeting between three of the suspects, Juan Antonio Escobar, Leon Baldomero DeLeon, and Bonifacio Hernandez, at Bravos Restaurant.  The agents then saw Escobar and DeLeon drive to 7430 Weatherhill, load a Ford Explorer parked outside the home with a heavy-looking black duffle bag (which agents later discovered contained a money counter) and several black plastic bags containing brick-shaped objects, and drive the Explorer to another house at 8915 Alejo, where Escobar and DeLeon unloaded the bags.

Escobar then left DeLeon at the home and met with Hernandez, Percel, and German Arias in the parking lot of Bravos.  The four returned to 8915 Alejo in the Explorer, where the DEA agents observed Percel and Arias carrying black bags into the house.

Escobar left the home again, leaving Percel and Arias there, and drove to an AutoZone to buy canned axle grease.  He then picked up Jesus Alejandro Osorio and Vasquez at 3737 Watonga and drove them to 8915 Alejo, where the three stayed for approximately fifteen minutes before returning to 3737 Watonga.  Upon returning to 3737 Watonga, Vasquez and Osorio got into a minivan with Illinois license plates, and Vasquez drove the minivan back to 8915 Alejo, followed by Escobar in his Explorer.  Vasquez parked the minivan in the garage, which was quickly closed, and Escobar parked the Explorer in the driveway and entered the home.

About an hour later, Escobar exited the home and drove the Explorer out of the driveway. The garage door then opened and Arias drove the minivan out of the garage and onto the street, with Osorio in the passenger seat. The minivan and the Explorer drove off in tandem toward Bingle Road.

Five minutes later, a Harris County Sheriff's Department patrol unit stopped the minivan on Bingle Road traveling in the direction of the 3737 Watonga residence. The unit searched the minivan and found ten kilograms of cocaine hidden in the right rear quarter panel. The cocaine was packed in one-kilogram bricks that were wrapped in two layers of cellophane with a layer of grease or menthol in between and enclosed in a vacuum-sealed bag to conceal the odor from drug-detection canines.

While the minivan was stopped, Escobar circled his Explorer around and headed back to 8915 Alejo. Escobar stopped near the driveway, and agents observed Hernandez, DeLeon, Percel, and Vasquez exit the house and get into the Explorer, which sped away, going sixty miles per hour in a thirty-mile-per-hour speed zone and running red lights and stop signs. Agents stopped the Explorer near 3737 Watonga and took its passengers out of the Explorer.

After these stops, the agents conducted searches of the three addresses surveilled—3737 Watonga, 8915 Alejo, and 7430 Weatherhill. At 3737 Watonga, they found industrial-sized green cellophane and vacuum-sealing bags identical to those used on the cocaine bricks found in the minivan. Both items contained cocaine residue on them. The agents also found a small scale and some bags with cocaine residue in the kitchen.

In the kitchen at 8915 Alejo, the agents found a heat-sealing machine and materials consistent with those used to wrap the cocaine bricks, including grease, rubber gloves smeared with grease, and green cellophane. The agents also found a tool set that they believed was used to remove and replace the panel in the minivan. In the front bedroom, the agents found two plastic bags with

twenty-five kilograms of cocaine wrapped in the same manner as the cocaine found in the minivan.

At 7430 Weatherhill, the agents found a number of scales, plastic bags, a vacuum-sealing machine, green cellophane, $47,000 in cash, a semi-automatic handgun, and eight kilograms of cocaine. The agents also found a white Dodge pickup truck with a hidden compartment behind the cab area that would have held approximately fifty kilograms of cocaine. The truck belonged to Leonardo Garcia, who was present at the home during the search.

Percel, Vasquez, Osorio, Hernandez, Escobar, DeLeon, Garcia, and Arias were arrested and charged. Hernandez, Escobar, DeLeon, Garcia, and Arias all pled guilty to at least one of the charges. Percel, Vasquez, and Osorio were tried together and each convicted by a jury on both counts. Percel and Vasquez were sentenced to 151 months imprisonment, followed by 5 years supervised release, a mandatory special assessment of $200, and a fine of $17,500.

At the trial, DeLeon and Arias testified against the defendants as part of the terms of their plea agreement. DeLeon testified that he sold thirty-five kilograms of cocaine to Osorio and Hernandez, who in turn sold it to Percel, Vasquez, and Arias. According to DeLeon, on the night in question, he and Escobar brought the cocaine from 7430 Weatherhill to 8915 Alejo, where everyone, including Percel and Vasquez, helped package the cocaine. DeLeon also stated that Vasquez, Percel, and Arias concealed the cocaine in the minivan when it was brought into the garage.

Arias testified that he had been close friends with Percel for twenty-eight years and had known Vasquez for approximately seven years. According to Arias, Percel and Vasquez made arrangements for him to come to Houston from New York with a minivan to buy drugs. Arias stated that he was taken to 8915 Alejo, where he saw cocaine and took part in packaging the cocaine, along with Percel and Vasquez. Arias also testified that Vasquez drove the minivan into

the garage of the house and that Arias helped Vasquez and Percel hide the cocaine in the panel of the minivan.

Additionally, Arias testified about a similar prior drug deal involving himself, Percel, and Vasquez. According to Arias, in December 2005 or January 2006, he drove a rented van from New York to Houston, where Percel and Vasquez helped him conceal fifteen kilograms of cocaine in the van. Arias then handed the van off to a man and woman who drove it to Boston. Arias received $5,000 for his trip.

Prior to the trial, the Government filed a notice of intent to offer evidence of this previous drug transaction, and the district court ruled that such evidence was admissible under Federal Rule of Evidence 404(b). After Arias gave the testimony, the court gave a limiting instruction to the jury, telling them that they "must not consider any of this evidence in deciding if the Defendants committed the acts charged in the indictment" but could only consider it to determine whether the defendants had the state of mind or intent necessary for the crime charged, had the motive or opportunity to commit the acts charged, acted according to a plan, or committed the act by accident or mistake.

Percel testified on his own behalf, while Vasquez declined to testify. Percel claimed that he was in Houston with a friend to visit the friend's relatives. Percel testified that he believed he was going to a party with Vasquez and Hernandez at the Alejo house. According to Percel, he never went into the kitchen or the garage of the house, never saw any cocaine, and never saw the minivan at the Alejo house. Instead, he remained in the living room, where he watched TV, played dominoes, and drank some beer. He also denied involvement in the cocaine transaction.

When instructing the jury at the close of the evidence, the judge stated, "The law does not require a defendant to prove his or her innocence or produce any evidence at all and no inference whatever may be drawn from the election

of a defendant to testify." The instruction to which the parties agreed stated that "no inference whatever may be drawn from the election of a defendant not to testify." Neither side raised any objections to the erroneous instruction when given, and the written instructions sent to the jury room contained the proper language.

## II

The first issue Percel and Vasquez raise on appeal is whether the district court committed reversible plain error in its oral jury instructions when it omitted the word "not" in stating that "no inference whatever may be drawn from the election of a defendant to testify." Generally, incorrect jury instructions are not considered structural errors,[1] and because neither Percel nor Vasquez objected to the jury instruction in the district court, we review the instruction for plain error.[2] A jury instruction is plain error if "(1) it was erroneous; (2) the error was plain; and (3) the plain error affected the substantial rights of the defendant."[3] This court has discretion to correct plain error where "the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"[4] The proper inquiry on plain error review "is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury did so apply it."[5]

---

[1] See Hedgpeth v. Pulido, 129 S. Ct. 530, 532 (2008) (holding that instructional errors that do not "categorically 'vitiat[e] all the jury's findings'" are trial errors, not structural errors (alteration in original) (emphasis and internal quotation marks omitted) (quoting Neder v. United States, 527 U.S. 1, 11 (1999))).

[2] United States v. Daniels, 252 F.3d 411, 414 (5th Cir. 2001).

[3] Id.

[4] Id. (alteration in original) (quoting United States v. Olano, 507 U.S. 725, 736 (1993)).

[5] United States v. Phipps, 319 F.3d 177, 190 (5th Cir. 2003) (quoting Victor v. Nebraska, 511 U.S. 1, 6 (1994)); see also id. (holding that a judge's "single slip of the tongue" in mentioning in one count the preponderance-of-the-evidence standard instead of the beyond-a-reasonable-doubt standard in the jury instructions was not plain error).

Percel, who testified at trial, appears to argue that by instructing the jury that "no inference whatever may be drawn from the election of a defendant to testify," the district court prevented the jury from making any inferences based on the content of his testimony. However, it is unlikely that the jury would have interpreted the instruction in such a way. At most, the instruction prevents the jury from drawing any inferences from Percel's election to testify, not from the substance of the testimony itself. Even if the instruction were interpreted as Percel contends, the judge later instructed the jury that it was permitted to draw reasonable inferences from the testimony of witnesses and that the defendant's testimony should be weighed just like any other witness. Thus, the district court's jury instruction was not plain error as to Percel.

Vasquez, who did not testify, argues that the instruction violated his Fifth Amendment right against self-incrimination because it allowed the jury to draw an inference of guilt from his failure to testify. A criminal defendant has a Fifth Amendment right for a judge, upon the defendant's request, to instruct a jury not to make any adverse inferences based on the defendant's election not to testify.[6] Vasquez requested a "no-adverse-influence" instruction, and the court agreed to give it. However, because the judge omitted the word "not" in his oral instructions, the instruction was error.

However, the judge's error was not plain error because the omission of the word "not" in the jury instruction, when viewed in light of the entire trial, did not seriously affect the trial's fairness or integrity. The effects of the judge's omission in his oral instructions were mitigated by the fact that the written instruction sent into the jury room contained the correct wording.

Moreover, at the beginning of the trial, during voir dire, the judge correctly instructed the potential jurors that the burden was on the Government to

---

[6] Carter v. Kentucky, 450 U.S. 288, 300 (1981).

present the evidence in the case and "if [the defendants] don't testify or put on any evidence, you cannot hold that against them as some indication of evidence. You can't require them or expect them to explain themselves or put on any evidence." The judge further explained that "there are reasons why in a criminal trial, which is completely different from any other situation in the whole world, . . . a person might not want to get up on the stand and explain themselves or tell you his side of the story. The law requires that you, as a juror . . . to say, [']Okay, that's fine, I'm not going to hold that against him.[']"

Given that the jury was properly instructed during voir dire and had access to the correct instruction during its deliberation, there is not a reasonable likelihood that the jury would have applied the judge's erroneous oral instruction unconstitutionally. The omission does not constitute plain error.

### III

Vasquez argues that there was insufficient evidence to support his conviction on both counts. Because he preserved his insufficiency-of-evidence claim by moving for a judgment of acquittal at the close of the Government's case-in-chief and at the close of all evidence, we review his claim de novo.[7] We will affirm the district court "if a reasonable trier of fact could conclude [that] the elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence to support the verdict."[8]

### A

Count One charged Vasquez with conspiracy to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846. The elements of that offense are (1) an agreement with

---

[7] United States v. McDowell, 498 F.3d 308, 312 (5th Cir. 2007).

[8] Id. (quoting United States v. Ragsdale, 426 F.3d 765, 770-71 (5th Cir. 2005)).

one other person to possess with intent to distribute at least five kilograms of cocaine; (2) defendant's knowledge of the agreement; and (3) defendant's voluntary participation in the conspiracy.[9]   Absent direct evidence of an agreement, the jury can infer the existence of an agreement from circumstantial evidence.[10]

Vasquez argues that the evidence was insufficient to show that he agreed to, knew about, or participated in the possession with intent to distribute cocaine.  He argues that the Government was only able to prove that Vasquez was present at the house, not that he participated in the drug-related activities.  Vasquez contends that the only evidence showing that he knew of and participated in the drug-related activities came from two cooperating witnesses who testified subject to the terms of a plea agreement and thus were not credible witnesses.

The evidence presented to the jury was more than sufficient to support Vasquez's conviction on Count One.  Though mere presence at a crime scene is insufficient to support an inference of participation in a conspiracy, "the jury may consider presence and association, along with other evidence, in finding conspiratorial activity by the defendant."[11]  The evidence clearly placed Vasquez at the location of the drug activities.  DeLeon and Arias testified that Vasquez and Percel had arranged to purchase the drugs and took part in the packing and stashing of the drugs in the minivan.

That DeLeon and Arias testified pursuant to a plea agreement does not change the fact that this evidence was sufficient for the jury to convict.  The jury knew that DeLeon and Arias were cooperating witnesses expecting sentence

---

[9] See United States v. Thomas, 348 F.3d 78, 82 (5th Cir. 2003).

[10] United States v. Chavez, 947 F.2d 742, 745 (5th Cir. 1991).

[11] Id.

reductions in return for their testimony, and the judge properly instructed the jury that "such testimony is always to be received with caution and weighed with great care." The jury was fully capable of weighing the credibility of these witnesses.

B

Count Two charged Vasquez with aiding and abetting the knowing and intentional possession with intent to distribute of five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii), and 18 U.S.C. § 2. To prove aiding and abetting, the Government must show that (1) the offense of possession with intent to distribute occurred and (2) Vasquez associated himself with the venture, participated in it as in something he wished to bring about, and sought by his action to make it succeed.[12] For the association element, "the defendant must have 'shared in the criminal intent of the principal[s].'"[13] The underlying offense of possession with intent to distribute requires the Government to prove that the defendant "(1) knowingly (2) possessed cocaine (3) with intent to distribute it."[14]

Vasquez admits that there was sufficient evidence to show that the offense of possession with intent to distribute occurred. However, he argues that there was no evidence that he was directly involved in the offense, other than the unreliable testimony of DeLeon and Arias. As discussed previously, the testimony of DeLeon and Arias was properly considered by the jury and was sufficient for a jury to convict Vasquez on Count Two.

---

[12] See McDowell, 498 F.3d at 313.

[13] Id. (alteration in original) (internal quotation marks omitted) (quoting United States v. Smith, 546 F.2d 1275, 1284 (5th Cir. 1977)).

[14] United States v. Medina, 161 F.3d 867, 873 (5th Cir. 1998).

IV

Percel asserts that the district court erred in permitting Arias to testify regarding a previous drug transaction in which Percel, Vasquez, and Arias participated. The district court permitted the testimony under Federal Rule of Evidence 404(b), which allows evidence of "other crimes, wrongs, or acts" for the purpose of proving "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[15] A district court's admission of Rule 404(b) evidence is subject to reversal only upon a clear showing of abuse of discretion.[16]

Under United States v. Beechum, this circuit applies a two-pronged analysis for the admissibility of evidence under Rule 404(b).[17] First, the evidence of "other crimes, wrongs, or acts" must be relevant to an issue other than the defendant's character.[18] The standard of relevance under Rule 401, which deems evidence relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," applies in this first prong analysis.[19] Furthermore, evidence in the 404(b) context "is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor."[20] Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice.[21]

---

[15] FED. R. EVID. 404(b).

[16] United States v. Bailey, 111 F.3d 1229, 1233 (5th Cir. 1997).

[17] 582 F.2d 898, 911 (5th Cir. 1978) (en banc).

[18] Id.

[19] Id. (quoting FED. R. EVID. 401).

[20] Huddleston v. United States, 485 U.S. 681, 689 (1988).

[21] Beechum, 582 F.2d at 911.

This court previously affirmed the district court's admission of the same evidence at issue here against Osorio in a separate appeal.[22] The Government argues that because the Rule 404(b) issue raised by Osorio in his appeal is identical to the issue raised by Vasquez and Percel here, our previous disposition of the matter should control.

Like Vasquez and Percel, Osorio challenged the admission of the evidence by asserting that there was insufficient proof that he participated in the prior drug transaction. Unlike Arias's testimony with respect to Percel and Vasquez, however, Arias did not testify that Osorio arranged the drug transaction, participated in it, or knew that it took place. Arias only testified that Osorio was present when four other individuals packaged and removed cocaine from Osorio's apartment. Because the testimony at issue in Osorio's appeal and the testimony at issue here differ in ways that alter the relevance inquiry, the resolution of the admissibility of Aria's testimony in Osorio's case is not dispositive. Nevertheless, our inquiry under Rule 404(b) leads us to the same result.

The district court properly applied the Beechum test in admitting Arias's testimony. The district court held that the evidence was offered for a purpose other than proving the defendants' bad character:

> Certainly evidence that some months before the commission of the crime alleged in the indictment, the three defendants took virtually identical actions to accomplish the transportation and delivery of multiple kilograms of cocaine would be probative of the defendants['] intent, motive, opportunity, preparation, plan, knowledge, and absence of mistake or accident in the crimes for which they were on trial.

The district court further held that the probative value of the evidence was not substantially outweighed by the risk of unfair prejudice, given the necessity of the evidence for the Government's attempt to prove that the defendants

---

[22] See United States v. Osorio, 288 F. App'x 971 (5th Cir. 2008).

possessed the requisite intent. To minimize the risk of unfair prejudice, the district court instructed the jury at trial not to consider this evidence for determining whether the defendants committed the acts charged but only for determining whether the defendants had the requisite state of mind.

Percel argues that the Government did not present sufficient evidence to prove that Percel actually engaged in this past drug deal. Percel bases this argument on the fact that Arias was a cooperating witness and thus lacked credibility. Again, the jury was fully capable of weighing Arias's credibility, and Arias's testimony was enough for the jury to reasonably conclude that Percel engaged in the past drug deal.

Percel also argues that the probative value of Arias's testimony was substantially outweighed by the risk of unfair prejudice. The Government argues that, given the similarities between the two drug transactions, the evidence was highly probative as to intent. Further, the Government argues that the district court's jury instructions minimized the risk of unfair prejudice. Given the probative value of the evidence and the mitigating effect of the jury instructions, the district court did not clearly abuse its discretion in permitting Arias's testimony under Rule 404(b).

\* \* \*

We AFFIRM.