# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 6, 2009

Charles R. Fulbruge III
Clerk

No. 07-20702

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

CARLOS LUIS GUERRA;
HECTOR MANUEL NUNEZ

Defendants - Appellants

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:06-CR-433-1

Before JOLLY, PRADO, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

A jury convicted Carlos Luis Guerra and Hector Manuel Nunez of conspiracy to distribute more than five kilograms of cocaine under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846, and aiding and abetting possession with intent to distribute more than five kilograms of cocaine under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii) and 18 U.S.C. § 2. Guerra and Nunez appeal both their convictions and sentences. For the reasons stated herein, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

The following facts were presented at trial.

Alfonso Alvarez, a police officer with the South Houston Police Department, was working undercover when an informant told him that Luis Guerra was selling large quantities of cocaine. The informant, Guadelupe Contreras, was a convicted felon who knew Guerra. Contreras called Guerra on Alvarez's behalf and asked whether Guerra could secure cocaine for Alvarez. Guerra agreed, and Contreras arranged for the three to meet at a local taqueria on October 31, 2006, to discuss the deal.

At the taqueria Guerra told Alvarez and Contreras that he would only sell them the cocaine at his residence. When the three later left the taqueria, Alvarez and Contreras followed Guerra to Hector Nunez's home at 7310 Legacy Pines Drive. They watched Guerra pull into the driveway and spoke with him by cell phone to confirm the residence was the place the transaction would take place. The next day Alvarez and Guerra spoke via phone and arranged to meet at Nunez's home on November 2.

On November 2, Alvarez and Guerra communicated via cell phone. That afternoon Alvarez drove Contreras to Nunez's home and let Contreras out to verify the cocaine was there; Alvarez then drove off. Contreras entered the home and Guerra showed him the cocaine. Contreras testified that Nunez, who was standing nearby, promised him the cocaine "was good." Contreras then called Alvarez, who returned to pick him up.

Alvarez immediately alerted agents who had been surveying 7310 Legacy Pines Drive that there was cocaine in the home. One of those agents was Violet Szeleczky-Brown. She testified that on the morning of November 2 she saw Nunez standing in the open garage. At around noon she saw a white pickup that was registered to Nunez pull into the driveway; Guerra was its passenger. Guerra got out of the truck and entered the home. He then exited the home, got

back into the passenger side of the truck, and left. Szeleczky-Brown was still watching when, three hours later, Guerra returned, this time as the passenger of a white Volkswagen Jetta. When Guerra entered the home, the car drove away. Guerra and Nunez later came outside and played basketball. Szeleczky-Brown testified that at some point Guerra took a phone call on his cell phone and, after he hung up, he spoke to Nunez and the two began jumping in the air and gave each other a high five. Minutes later, a navy pickup pulled into the drive. A man later identified as Arnoldo Trevino got out of the truck and handed a blue bag to Guerra. After Guerra and Nunez walked into the home, Trevino drove away. Alvarez and Contreras arrived shortly thereafter, and Szeleczky-Brown watched as Contreras entered and later exited the home.

Shortly after Alvarez alerted them, agents arrived to execute search and arrest warrants. They found the blue bag and 17 bricks of cocaine in it. They also found pieces of paper on which what appeared to be monetary calculations had been written. The agents seized that evidence, along with Guerra's and Nunez's cell phones. They arrested Guerra and Nunez.

Fingerprints taken from both the bag and the pieces of paper were later matched to those of Guerra. Cell phone records showed that on the day Guerra met Alvarez and Contreras at the taqueria, Guerra called Nunez twenty-two times.

On November 29, a grand jury indicted Guerra, Nunez, and Arnoldo Trevino and charged them with conspiracy to distribute more than five kilograms of cocaine under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii),[1] and 846,[2] and

---

[1] 28 U.S.C. § 841:

    (a)    Unlawful acts
            Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally –
            (1)     to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance

aiding and abetting possession with intent to distribute more than five kilograms of cocaine under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii) and 18 U.S.C. § 2.[3] Trevino pleaded guilty to conspiracy; Guerra and Nunez tried their case to a jury and were convicted of both conspiracy and aiding and abetting possession.

The district judge sentenced Guerra to two terms of 168 months, to be served concurrently, and two five-year terms of supervised release, also to be served concurrently.

---

****
(b)     Penalties
        Except as otherwise provided in section 859, 860, or 861, of this title, any person who violates subsection (a) of this section shall be sentenced as follows:
        (1)(A)  In the case of violation of subsection (a) of this section involving–
        ****
                (ii)    5 kilograms or more of a mixture or substance containing a detectable amount of –
                ****
                        (II)    cocaine, its salts, optical and geometric isomers, and salts of isomers;
                        ****
        such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . . .

[2] 28 U.S.C. § 846:

Any person who attempts to or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

[3] 18 U.S.C. § 2:

(a)     Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
(b)     Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

The district judge sentenced Nunez to two terms of 151 months each, to be served concurrently, and two five-year terms of supervised release, also to be served concurrently.

## II.

On appeal, Guerra and Nunez challenge their convictions and sentences.

Guerra alleges the evidence was insufficient to convict him of either conspiracy or aiding and abetting possession, and that the district court's sentence was unreasonable.

Nunez also alleges the evidence was insufficient to convict him of either conspiracy or aiding and abetting possession. He also alleges that the district court's sentence was unreasonable, but specifically complains that the district court used the cocaine's net weight, as opposed to its "pure" weight, to determine his total offense level for sentencing purposes. In addition, Nunez claims that at his arraignment hearing the magistrate judge incorrectly summarized the charges against him and thus his not-guilty plea was not knowing and voluntary. Finally, Nunez claims that he was charged not with possession, but with aiding and abetting possession, and the district court therefore erred when it instructed the jury that Nunez had been charged with possession.

We address the sufficiency of the evidence and reasonableness of the sentences for both Guerra and Nunez before we address Nunez's additional claims.

## III.

Both Guerra and Nunez claim that the evidence at trial was insufficient to convict them of either conspiracy or aiding and abetting possession.

In evaluating the sufficiency of the evidence, we ask "whether any reasonable trier of fact could have found that the evidence established the essential elements of the crime beyond a reasonable doubt." *United States v. Martinez-Lugo*, 411 F.3d 597, 599 (5th Cir. 2005) (citing *United States v. Ortega*

*Reyna*, 148 F.3d 540, 543 (5th Cir. 1998)). We consider the evidence "in the light most favorable to the verdict" and therefore must draw "all reasonable inferences in support of the verdict." *Id.*

We address the conspiracy conviction first. To establish conspiracy to possess and distribute more than five kilograms of cocaine, the government had to prove the following elements beyond a reasonable doubt: "(1) an agreement with one other person to possess with intent to distribute at least five kilograms of cocaine; (2) defendant's knowledge of the agreement; and (3) defendant's voluntary participation in the conspiracy." *United States v. Percel*, 553 F.3d 903, 910 (5th Cir. 2008).

Guerra argues generally that there was no evidence that he entered an agreement with Nunez and Trevino to possess and distribute cocaine. It is well-established, however, that "the jury can infer the existence of an agreement from circumstantial evidence." *Id.* (citing *United States v. Chavez*, 947 F.2d 742, 745 (5th Cir. 1991)). At trial, there was more than adequate circumstantial evidence from which a jury could infer the existence of an agreement between Guerra and Nunez. Testimony and cell phone records showed that on October 31, 2006, the day Guerra first agreed to sell cocaine to Alvarez and Contreras, Guerra called Nunez twenty-two times. Agent Szeleczky-Brown testified that while surveying Nunez's home on November 2, she saw Guerra come and go, and also saw Guerra take a phone call and apparently celebrate its news by jumping up and down with Nunez and giving him a high five. Minutes later, she saw Trevino arrive with a blue bag that was later found to contain seventeen bricks of cocaine. Contreras testified that when he arrived, Guerra showed him the bag of cocaine and Nunez vouched for its quality. From this evidence the jury could easily infer that Guerra had entered an agreement with Nunez, if not also with Trevino. Guerra fails to show that the evidence was insufficient to convict him of conspiracy.

Nunez argues that the evidence showed only that he was present, and not that he was a co-conspirator. He points out that agents did not recover his fingerprints from either the blue bag or the pieces of paper on which what appeared to be monetary calculations had been written, and claims the pieces of paper could not otherwise prove his participation in the conspiracy. Nunez neglects, however, to mention that there was testimony that the calculated figures on the pieces of paper represented the profit that would be made from the sale and how it would be split between Guerra and Nunez. He also neglects to mention that there was testimony that Guerra called Nunez twenty-two times on October 31, that on November 2 Nunez and Guerra celebrated in Nunez's driveway only minutes before Trevino delivered the cocaine, and that Nunez told Contreras the cocaine "was good." And although as a fact it is not sufficient in and of itself, it bears noting that all of these events transpired at *Nunez*'s house. Knowledge of and voluntary participation in a conspiracy "may be inferred from a 'collection of circumstances.'" *United States v. Fuchs*, 467 F.3d 889, 908 (5th Cir. 2006) (citations omitted). The "collection of circumstances" here was sufficient to infer Nunez's knowledge and voluntary participation and was therefore sufficient to convict Nunez of conspiracy.

The evidence was also sufficient to convict both Guerra and Nunez of aiding and abetting possession. To prove the crime of aiding and abetting, the government had to establish that Guerra and Nunez: "(1) associated with the criminal venture; (2) purposefully participated in the crime; and (3) sought by [their] actions for it to succeed." *United States v. Pando Franco*, 503 F.3d 389, 394 (5th Cir. 2007), *cert. denied*, — U.S. —, 128 S.Ct. 1874 (2008). We have held that evidence supporting a conspiracy conviction typically supports an aiding and abetting conviction. *See, e.g.*, *United States v. Rodriguez*, 553 F.3d 380, 391 (5th Cir. 2008) (quoting *United States v. Singh*, 922 F.2d 1169, 1173 (5th Cir. 1991)). We conclude the evidence supporting Guerra's and Nunez's convictions

of conspiracy equally supports their convictions of aiding and abetting possession.

## IV.

Both Guerra and Nunez challenge their sentences as unreasonable. In our review to determine whether a sentence is reasonable, we ask whether the district court abused its discretion. *See, e.g.*, *United States v. Herrera-Garduno*, 519 F.3d 526, 529 (5th Cir. 2008). Our review is bifurcated: We "'first ensure that the district court committed no significant procedural error'" and "'then consider the substantive reasonableness of the sentence imposed.'" *Id.* (quoting *Gall v. United States*, 552 U.S. — , 128 S.Ct. 586, 597 (2007)). Both Guerra and Nunez allege procedural errors. *See, e.g.*, *United States v. Rodriguez*, 523 F.3d 519, 525 (5th Cir. 2008) (sentencing court procedurally errs when, for instance, it fails to properly calculate the offense level and sentencing range, fails to consider sentencing factors as listed in 18 U.S.C. § 3553(a), treats sentencing guidelines as mandatory, or accepts as a basis for sentence clearly erroneous facts) (citing *Gall*, 552 U.S. — , 128 S.Ct. at 597)).

Guerra claims the district court treated the sentencing guidelines as mandatory. Guerra, however, offers no support for this claim, and the record plainly refutes it. At Guerra's sentencing hearing the district court told Guerra that it had *considered* the sentencing guidelines and concluded that a sentence under the guidelines would be consistent with, and take into account, the factors listed in 18 U.S.C. § 3553(a). Guerra does not show the district court procedurally erred by treating the sentencing guidelines as mandatory.

Nunez claims the district court improperly used the cocaine's net weight, as opposed to its "pure" weight, to determine his total offense level for sentencing purposes. He argues the court should have calculated the weight of the cocaine for sentencing purposes by multiplying the cocaine's net weight, 17.01 kilograms, by its purity, 80 percent. If the court had thus calculated the cocaine's weight,

Nunez would have been liable for only 13.6 kilograms of cocaine, and would have qualified for a base offense level of 32, for which the sentencing range is 121 to 151 months. Instead, the court accepted for sentencing purposes the cocaine's net weight, 17.01 kilograms, which assigned to Nunez a base offense level of 34, for which the sentencing range is 151 to 188 months.

We find no error in the court's use of the cocaine's net weight to determine Nunez's base offense level. Under the sentencing guidelines, a court determines a defendant's base offense level in drug cases by reference to a drug quantity table. The table lists controlled substances and assigns base offense levels by their weights. The notes that accompany the table explain:

> *Unless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance.* If a mixture or substance contains more than one controlled substance, the weight of the entire mixture or substance is assigned to the controlled substance that results in the greater offense level.

U.S.S.G. § 2D1.1(c) n.(A) (2006) (emphasis added).

For some controlled substances, for instance, PCP and methamphetamine, the table designates weight "actual." That designation refers to "the weight of the controlled substance, itself, contained in the mixture or substance." *Id.* at n.(B). The table does not, however, designate the weight of cocaine "actual." The weight of cocaine for sentencing purposes is instead "the entire weight of any mixture or substance containing a detectable amount of [cocaine]." *Id.* at n.(A). The district court properly accepted for sentencing purposes the cocaine's net weight, 17.01 kilograms. Nunez fails to establish procedural error.

Neither Guerra nor Nunez challenge the substantive reasonableness of their sentences. We note, however, that having found no procedural error, we also find no substantive error. Guerra's and Nunez's sentences both fall within

the properly-calculated guidelines range and are, therefore, presumptively reasonable. *See United States v. Gomez-Herrera*, 523 F.3d 554, 558 (5th Cir. 2008) (citing *Rita v. United States*, 551 U.S. — , 127 S.Ct. 2456, 2462 (2007)). There was no abuse of discretion.

V.

Nunez also claims that at his arraignment hearing the magistrate judge incorrectly summarized the charges against him and therefore his not-guilty plea was not knowing and voluntary. We find no error in the magistrate judge's delivery of the charges at Nunez's arraignment.

A defendant has a right to know the charges against him and to have adequate information from which to prepare his defense. *See, e.g.*, *United States v. Correa-Ventura*, 6 F.3d 1070, 1073 (5th Cir. 1993) (citing *United States v. Rogers*, 469 F.2d 1317, 1318 (5th Cir. 1972)). An arraignment protects those rights. *See* FED. R. CRIM. P. 10 (defendant shall be informed of "the substance of the charge" and called on to plead thereto). A conviction will not be vacated, however, for lack of formal arraignment proceedings, absent possible prejudice. *Correa-Ventura*, 6 F.3d at 1073.

The indictment in this case charged Guerra, Nunez, and Trevino with two counts, one for conspiracy and the other for possession. At the arraignment, the magistrate judge confirmed that the defendants' attorneys had "discussed the accusations in the indictment with [their] clients." The magistrate judge asked the defendants whether they had discussed the charges with their attorneys; they answered "yes." We have held that where a judge confirms that defense counsel has informed a defendant of the charges against him, no prejudice results from the failure of the judge to personally inform the defendant of those charges. *United States v. Grote*, 632 F.2d 387, 389 (5th Cir. 1980) ("We do not believe that any prejudice has resulted from the failure of the trial judge personally to inform the defendant of the charges against him. The trial judge

10

assigned that responsibility to appointed counsel, and he satisfied himself that that responsibility had been discharged before calling upon the defendant to plead.").

Nevertheless, in addition to confirming that the defendants' attorneys had discussed the charges with their clients, the magistrate judge also summarized both counts for the defendants:

> Each of you are accused in Count One of the indictment that alleges that you conspired or made an agreement to possess with intent to distribute cocaine, five kilograms or more, on or about October 31st, 2006, and continuing through November the 2nd of 2006. That is Count One of the indictment. Count Two alleges that you each possessed with intent to distribute cocaine, five or more kilograms of cocaine.

Nunez claims that the magistrate judge incorrectly told them that count two charged them with possession, and complains that the magistrate judge did not tell them that they had been charged with aiding and abetting possession. These alleged errors are without merit. The magistrate judge correctly summarized count two of the indictment, which plainly titled itself "Possession with the Intent to Distribute (Cocaine)" and plainly charged the defendants with possession under 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(A)(ii).[4] That count two also charged the defendant with aiding and abetting possession under 18 U.S.C. § 2

---

[4]

COUNT TWO
Possession with the Intent to Distribute (Cocaine)

On or about 2 November 2006 . . . defendants herein, aiding, assisting, and abetting each other and others, known and unknown to the Grand Jury, did unlawfully, knowingly, and intentionally possess with the intent to distribute a controlled substance. This violation involved 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii) and 18 U.S.C. § 2.

does not render the magistrate judge's summary of count two inadequate, where the magistrate judge very correctly conveyed to the defendants "the substance of the charge." There was no error in the defendants' arraignment proceedings.

## VI.

Finally, Nunez claims that he was charged not with possession, but with aiding and abetting possession, and that the district court therefore erred when it instructed the jury that Nunez had been charged with possession. This issue is without merit. As previously stated, the indictment very plainly charged Nunez with possession with intent to distribute cocaine.

Moreover, we note that in its preliminary instructions to the jury, the district court recited the elements of conspiracy, possession, and aiding and abetting possession. In its jury charge prior to deliberations, the district court carefully explained the elements of conspiracy, possession, and aiding and abetting possession. The instructions were consistent with the charges in counts one and two of the indictment. The judgment indicates that Nunez was convicted of conspiracy and aiding and abetting possession with intent to distribute. Contrary to his assertion otherwise, Nunez was not convicted of an unindicted crime.

## VII.

For the foregoing reasons, the convictions and sentences are

AFFIRMED.