# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 7, 2010

No. 09-50359

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

RANDELL L. MCKOY; SHANNON L. SMITH,

Defendants - Appellants

Appeals from the United States District Court
for the Western District of Texas
USDC No. 7:08-CR-241

Before CLEMENT, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Randell L. McKoy and Shannon L. Smith were convicted of possession of a firearm in furtherance of a drug trafficking offense, and of aiding and abetting with intent to distribute cocaine. Smith also was convicted of being a felon in possession of a firearm. Both appeal. We REVERSE McKoy's conviction for the firearm possession, VACATE his sentence under that count, and REMAND. We AFFIRM in all other respects.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## FACTS & PROCEDURAL HISTORY

The Police Department of Odessa, Texas organized a controlled drug buy. An informant arranged to meet Randell McKoy at a restaurant in a shopping center to purchase crack cocaine. About an hour after the meeting was arranged, McKoy called the informant to say he was outside the restaurant in a gray Lincoln pickup truck. Plainclothes officers watching the area confirmed there was an unoccupied gray Lincoln pickup truck in front of the restaurant. One officer saw McKoy and Shannon Smith walking down the sidewalk. That officer overheard McKoy say to Smith, "he is on his way." McKoy and Smith then entered a nail salon next door to the restaurant.

McKoy exited the nail salon and was using his cell phone in front of the Lincoln. At this point, the officers decided to arrest the men. Officers detained McKoy about 20 feet from the salon. McKoy was handcuffed and searched. A bag of cocaine was found in his waistband. Smith was still in the nail salon when officers entered, detained, and searched him. Officers found $1,760 in cash in his pockets.

Officers then searched the Lincoln pickup truck. They found a loaded .45 caliber pistol between the center console and the driver's seat. The truck belonged to Smith's aunt. Initially, Smith stated the gun belonged to his aunt and officers could call her to confirm that fact. An officer testified that McKoy denied knowledge of the drugs in his waistband.

Later, officers executed a search warrant at Smith's home. There, they found a black pistol case with the same serial number as the gun retrieved from the Lincoln pickup truck, ammunition that could be used with that gun, and ballistic body armor. Officers seized a satellite television bill for that address in Smith's name. They also found a receipt for car repair work with McKoy's name on it, dated about a month prior to the arrest.

Both defendants were charged with (1) aiding and abetting possession with intent to distribute 50 or more grams of cocaine base and (2) possession of

2

a firearm in furtherance of a drug trafficking crime. In addition, Smith was charged with being a felon in possession of a firearm. They were tried together.

McKoy and Smith each testified at trial. McKoy admitted possession of the drugs. He denied knowledge of the gun's presence in the vehicle. He stated that he and Smith never spoke about the gun, and he had not seen it. McKoy also denied that Smith knew that a drug transaction was occurring.

At trial, Smith admitted knowledge of the gun, the gun case, and the ammunition. He testified that he did not load the gun, though he knew it was loaded. Smith denied knowing that McKoy was engaged in a drug transaction at the time of their arrest. He stated that the $1,760 found in his pockets was money from his business of renting inflatable castles for children's parties. He had the money with him because he wanted to buy a computer in the shopping center. Smith also stated McKoy could not have known about the gun in the vehicle, because he could not have seen it and they did not discuss it.

The jury found both defendants guilty on all counts. After judgment, they filed timely notices of appeal.

## DISCUSSION

### A. *Sufficiency of the Evidence*

McKoy and Smith moved for a judgment of acquittal at the close of the Government's case and at the close of the evidence. These motions preserved for our *de novo* review the issue of the sufficiency of the evidence. *See United States v. Percel*, 553 F.3d 903, 910 (5th Cir. 2008).

We will uphold a verdict if a reasonable trier of fact could conclude that the elements of the offense were proven beyond a reasonable doubt, "viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence to support the verdict." *Id*. (footnote omitted). Our task is not to "weigh evidence or assess the credibility of witnesses"; we recognize "the jury is free to choose among reasonable constructions of the evidence." *United States v. Ramos-Cardenas*, 524 F.3d 600, 605 (5th Cir. 2008).

3

Direct and circumstantial evidence are weighed equally; it is not necessary that the evidence exclude every reasonable hypothesis of innocence. *United States v. Mendoza*, 226 F.3d 340, 343 (5th Cir. 2000).

  1. *Smith: Aiding and Abetting Possession with Intent to Distribute*

Smith argues the evidence was insufficient to show he was guilty of conspiracy to distribute 50 or more grams of cocaine base. The problem with this argument is that Smith was not convicted of conspiracy. Instead, the charge was for aiding and abetting possession with intent to distribute 50 or more grams of cocaine base.

Because Smith has not argued that the evidence was insufficient to support his conviction for aiding and abetting, he has abandoned this issue on appeal. *United States v. Lindell*, 881 F.2d 1313, 1325 (5th Cir. 1989).

  2. *Smith and McKoy: Possession of a Firearm in Furtherance of a Drug Trafficking Crime*

Smith and McKoy were each sentenced as an individual who "during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). Possession of a firearm "is 'in furtherance' of the drug trafficking offense when it furthers, advances, or helps forward that offense." *United States v. Ceballos-Torres*, 218 F.3d 409, 411 (5th Cir.), *amended in part*, 226 F.3d 651 (5th Cir. 2000).

Smith admitted that he possessed the firearm. His assertion is that he did not possess it "in furtherance of" a drug trafficking crime because the firearm was not readily accessible to him at the time of his arrest, he did not possess any drugs, and the firearm did not actually further the drug trafficking offense.

We consider several factors in determining whether firearm possession is "in furtherance" of a drug trafficking offense:

> the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the

status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

*Id.* at 414-15. A firearm may advance a drug trafficking offense by providing protection in the event the transaction becomes dangerous. *Id.* at 412.

Based on these factors, a reasonable trier of fact could conclude that the evidence established beyond a reasonable doubt that Smith's firearm possession furthered, advanced, or helped forward the drug trafficking offense. *See id.* at 410-11. The firearm was found between the driver's seat and the center console of the truck that Smith drove to the location of the planned drug transaction. The firearm was readily accessible and in close proximity to the drugs while they were in the truck. The firearm was fully loaded with 13 rounds of ammunition and the slide was in the forward position, ready for use. Though Smith was not carrying the gun, he could have reached it relatively quickly. *See United States v. Charles*, 469 F.3d 402, 406-07 (5th Cir. 2006). A rational trier of fact could conclude that Smith possessed the firearm in furtherance of the drug sale. *See Percel*, 553 F.3d at 910; *see also Ceballos-Torres*, 218 F.3d at 410-11.

As to McKoy, the Government's theory at trial was that McKoy and Smith had joint possession of the gun. Gun "possession can be established by (1) actual, physical possession of the firearm, (2) sole control and occupancy of a place where a firearm is found, or (3) joint occupancy of a place where a firearm is found, combined with some evidence of the defendant's access to and knowledge of the firearm." *United States v. Anderson*, 559 F.3d 348, 353 (5th Cir. 2009). The evidence must show "at least a plausible inference" that McKoy knew of and had access to the gun. *United States v. Fields*, 72 F.3d 1200, 1212 (5th Cir. 1996).

The test for determining whether possession is established in joint occupancy cases is a "commonsense, fact-specific" one. *United States v. Mergerson*, 4 F.3d 337, 349 (5th Cir. 1993). Mere joint occupancy is not enough;

"something else (e.g., some circumstantial indicium of possession) is required." *Id.* The Government thus had to prove that besides merely occupying the vehicle, McKoy also had knowledge of and access to the firearm.

In its case in chief, the Government presented evidence about the planned drug sale and the location of the gun in the vehicle. The evidence that allegedly connected McKoy to the firearm was that he could have seen the gun in or around the vehicle or that he could have seen the gun at Smith's house.

The fact that the gun was in the vehicle does not support that McKoy had knowledge of it as a passenger. While searching the vehicle, Sergeant Fletcher saw the gun only when she leaned down to look under the driver's seat. At that point, she was able to see the butt of the gun against the side of the seat. The gun was between the driver's seat and the center console. When asked if the gun was exposed, Sergeant Fletcher replied, "No, not really." There is nothing to support that McKoy knew of the gun as a result of its location.

Alternatively, the Government argues that McKoy had knowledge of the gun arising from his prior presence in Smith's home. The sole piece of evidence to support this inference is a receipt with McKoy's name on it, dated about one month prior to the arrest, found in Smith's home. The Government asserts that because of this evidence, the jury could conclude McKoy saw the gun while he was at Smith's house and saw him place it in the vehicle. This is speculation only and not an inference. This evidence places McKoy at Smith's home at some point in the month prior to the arrest. It does not indicate that McKoy was there on the day of his arrest, that he ever saw the gun, or that he knew it was in the vehicle at the time of his arrest.

Viewing all inferences in the light most favorable to the verdict, we find insufficient evidence for the jury to conclude that McKoy had knowledge of and access to the firearm. The Government has thus failed to establish the possession element of this crime.

*B.     Admission of Special Agent Sutherland's Testimony*

McKoy argues the district court erred in allowing Special Agent David Sutherland to comment on the veracity of other witnesses. We review a properly preserved objection, as this was, to an evidentiary ruling for abuse of discretion. *See United States v. Clark*, 577 F.3d 273, 287 (5th Cir. 2009).

At trial, McKoy denied telling Sutherland at the scene that he did not possess the cocaine found on him. McKoy testified, "I didn't tell him that. I told him that I wasn't going to talk to him until I got my lawyer." On rebuttal, the Government called Sutherland. He testified that McKoy in fact had denied possession of the cocaine and said he did not understand why he was being arrested. Sutherland also was asked whether he questioned McKoy further on the subject, and responded, "As to that part of the discussion, I am pretty sure I told him I didn't believe him and I didn't think these officers would lie." McKoy's counsel objected, but the district court overruled the objection. The district court found it not improper opinion testimony because Sutherland was testifying about what he believed he said to McKoy, and was not expressing his current opinion about a witness's veracity.

Although Sutherland was allowed to testify that he questioned McKoy's truthfulness, his testimony explained only what Sutherland had told McKoy during a post-arrest interview. *See United States v. Finley*, 477 F.3d 250, 260-62 (5th Cir. 2007). In one decision, we reversed a conviction because, without a proper predicate, the Government presented testimony that the defendant and his witnesses were not of truthful character and their testimony was not to be believed. *United States v. Dotson*, 799 F.2d 189, 191-94 (5th Cir. 1986). No such error occurred here.

McKoy has not shown that the district court abused its discretion in admitting Sutherland's testimony. *See Finley*, 477 F.3d at 260-62.

CONCLUSION

The evidence does not establish McKoy's knowledge of and access to the firearm. Therefore, we REVERSE McKoy's conviction for possession of a firearm in furtherance of a drug trafficking crime, VACATE his sentence under that count, and REMAND for further proceedings consistent with this opinion.

In all other respects, we AFFIRM.