# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 15, 2020

Lyle W. Cayce
Clerk

No. 19-60103

UNITED STATES OF AMERICA,

 Plaintiff - Appellee

v.

ANKIT PURI,

 Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi
USDC 3:18-CR-115-1

Before DAVIS, HAYNES, and OLDHAM, Circuit Judges.

PER CURIAM:*

 Ankit Puri appeals his conviction for being an alien in possession of a firearm. Applying plain error review, we AFFIRM.

---

 * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-60103

## I.  Background

A jury convicted Ankit Puri of one count of being an alien in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(5)(A)[1] and 924(a)(2).  Puri is an Indian national who entered the United States in June 2015 after obtaining a visa that allowed him to remain legally until December 28, 2015.

On March 3, 2018, Puri was working as a clerk at a convenience store. He nonfatally shot a customer with a firearm after a confrontation.

At Puri's trial, Anthony Williams, a special agent with Homeland Security Investigations, testified that he first came in contact with Puri on May 4, 2018, after Puri had been arrested by immigration officials.  At the time, Puri was being processed by Immigration and Customs Enforcement officers to be removed from the United States and deported back to India.  Williams testified that Puri had been admitted into the United States on a nonimmigrant B-2 visa, which had a departure date of December 28, 2015.  He confirmed that after December 28, 2015, Puri was unlawfully present in the United States.  Williams also confirmed that Puri was not permitted to possess a firearm once he overstayed his visa.

Williams interviewed Puri on June 19, 2018.  An audiotape of the interview was admitted into evidence, and a portion of it was played for the jury (although the court reporter failed to transcribe the portion played). During the interview, Puri admitted that he was in removal proceedings to be deported back to India because he overstayed his visa, that he was not supposed to be working, and that he was not allowed to possess a firearm. Williams specifically asked whether Puri knew that he was "not allowed to

---

[1] This section makes it "unlawful" for anyone who is "illegally or unlawfully in the United States" to "possess in or affecting commerce, any firearm."

have a firearm," and Puri responded: "But I was not having that firearm, was not me, it was keeping at store."

On cross examination, Williams testified that, at some point, Puri had been released on an immigration bond. Puri's receipt for the bond showed that he paid a $10,000 cash bond to be released from custody pending the outcome of his removal proceedings. According to Williams, the receipt does not impart any kind of legal status, and after the receipt was issued, Puri was still illegally or unlawfully present in the United States.

Puri represented himself at trial. Regarding his status in the United States, Puri testified that he was "being paroled." When asked by the court what he meant, Puri responded that he "was given an ID card I-94 . . . which make[s him] legal in United States, not legal as a voter but legal as to verify." The court asked him whether he meant that he was legally present in the United States, and Puri responded, "Yes, sir." After discussing the form I-94 further, Puri reaffirmed his belief that he was present in the United States legally.

On cross examination, Puri confirmed that he had been admitted under a nonimmigrant visa, that the visa had expired, and that he had overstayed his visa by more than two years when the shooting occurred. Additionally, Puri admitted that in 2017, immigration agents had picked him up to process him for removal. While awaiting his removal hearing, he posted a $10,000 bond. When asked whether the receipt for the bond meant that he was legally in the United States, Puri responded "[n]ot this particular document. I applied for asylum, too, which also say[s] that I am lawfully present" in the United States. Regarding the bond receipt, Puri stated "[i]t's not saying that I am legally but it say[s] that I am admitted in [the] United States."

Later, the Government asked Puri if he was "in an illegal status on the day that" the shooting occurred, and Puri denied that he was. When asked

why he told Williams that he had "illegal status," Puri responded that at the time he spoke with law enforcement officials, he did not know "what I-94 stands for," and he subsequently learned from "law books" that he was "paroled" in the United States. Nevertheless, Puri responded affirmatively that in his interview he had admitted to Williams that he had overstayed his visa and was "illegal."

Williams testified again on rebuttal. He stated that Puri's bond receipt "in no way gives him any type of immigration status" and that the I-94 form was "simply an arrival and departure form." He also testified that Puri's record contained no evidence showing that Puri had applied for or received any type of asylum and, even if he had filed an application for asylum, such an application would not have changed his legal status.

In instructing the jury, the district court read count one of the indictment, which alleged in relevant part that Puri, "being then and there an alien illegally and unlawfully in the United States, did knowingly possess a firearm, to wit: a Glock 9mm Pistol, which had been previously transported in interstate commerce." The court then summarized a list of the elements for the offense, including that the Government prove he was an alien unlawfully and illegally in the United States. Regarding the term "knowingly," the district court stated,

> So, first of all, if you study the indictment, you will notice that the government has to prove by proof beyond a reasonable doubt that the defendant here knowingly possessed a firearm as charged. Knowingly possessed. And what do I mean by knowingly possessed? The word "knowingly," as that term has been used in the indictment, means that the act was done voluntarily and intentionally and not because of mistake or accident. So then, as I said, the first part you have to consider [is] whether he knowingly possessed a firearm. I just read you the definition of knowingly: That he had under his control, in his hands, et cetera, a firearm, and that he knew that it was a firearm.

No. 19-60103

The instruction did not include as an element the requirement that Puri knew he was "illegally or unlawfully" present in the United States when he possessed the firearm.  Puri did not object to the jury charge.

During his closing argument, Puri conceded that he knowingly possessed a firearm and shot a person, but he did not concede that he was present "illegally or unlawfully" when the incident occurred.  Notably, he stated that on the day of the shooting, "[he] was not illegal in United States because of [his] pending application, definition of I-94, and the immigration codes."

In its closing argument, the Government contended that "[r]egardless of what the defendant thinks of his own status, what's important is what the law says," and Williams had testified that Puri was not legally present on the date of the incident, "despite whatever [Puri] may want to believe."

After Puri was convicted, the district court sentenced him to 30 months' imprisonment and three years of supervised release.  Puri timely appealed.

## II.    Standard of Review

Because Puri did not object to the indictment or the jury instructions in the district court, we review for plain error.  *See United States v. Bolton*, 908 F.3d 75, 87–88 (5th Cir. 2018) (reviewing for plain error where the defendant did not preserve his objection to the indictment); *United States v. Percel*, 553 F.3d 903, 909 (5th Cir. 2008) (same for a jury instruction).  Plain error exists where (1) there is an error; (2) the error is plain; and (3) the error affected the defendant's substantial rights. *Percel*, 553 F.3d at 909.  If the first three prongs are met, we have discretion to correct the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks and citation omitted).

## III.    Discussion

Puri argues that the indictment and jury charge omitted an essential element of his offense because neither referenced the issue of whether Puri

knew he was "illegally or unlawfully" present in the United States at the time that he possessed the firearm.  We conclude that the first two prongs of plain error review are met, but not the third.

The Supreme Court recently decided *Rehaif v. United States*, 139 S. Ct. 2191 (2019).[2]  The Court held that, to convict a defendant under § 922(g) and § 924(a)(2), which is the same offense as Puri's conviction, the Government must prove that the defendant knew he belonged to the category of persons barred from possessing a firearm.  *Id.* at 2200.

"[T]he defendant's status is the crucial element separating innocent from wrongful conduct[,]" so if a defendant does not know that he is unlawfully in the United States, then he "does not have the guilty state of mind that the statute's language and purposes require."  *Id.* at 2197–98 (internal quotation marks and citation omitted).  Accordingly, the Government must prove that the defendant knew he belonged to the class of persons prohibited from possessing a firearm in addition to proving that he knowingly possessed a firearm.  *Id.* at 2200.

In this case, neither the indictment nor the jury charge included what the Supreme Court determined to be a "crucial element" of Puri's offense: that he knew of his status when he possessed the firearm.  *Id.* at 2197.  Accordingly, we conclude that the indictment omitted an essential element of the charge and that the district court erred when it instructed the jury.

---

[2] At the time of Puri's trial, *Rehaif* had not been decided, but plain error review addresses the law at the time of appeal such that *Rehaif* applies.  *See United States v. Escalante-Reyes*, 689 F.3d 415, 423 (5th Cir. 2012) ("[W]here the law is unsettled at the time of trial but settled by the time of appeal, the 'plainness' of the error should be judged by the law at the time of appeal."); *see also Schriro v. Summerlin*, 542 U.S. 348, 351 (2004) ("When a decision of [the Supreme] Court results in a new rule, that rule applies to all criminal cases still pending on direct review." (internal quotation marks and citation omitted)).

No. 19-60103

Further, the error was plain. "An indictment is legally sufficient if (1) each count contains the essential elements of the offense charged, (2) the elements are described with particularity, and (3) the charge is specific enough to protect the defendant against a subsequent prosecution for the same offense." *United States v. Cooper*, 714 F.3d 873, 877 (5th Cir. 2013) (internal quotation marks and citation omitted). Here, the indictment was not legally sufficient because it did not contain an essential element. Similarly, a jury charge must correctly instruct the jurors on the law. *See United States v. Fairley*, 880 F.3d 198, 208 (5th Cir. 2018). The district court's charge did not, and its exclusion of an essential element of the crime amounted to plain error. *See United States v. Flitcraft*, 803 F.2d 184, 186–87 (5th Cir. 1986).

Having found the first two prongs of plain error review are met, we turn to the third: whether the error affected Puri's substantial rights. "To show that a clear and obvious error affected his substantial rights, a defendant must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *United States v. Wikkerink*, 841 F.3d 327, 337 (5th Cir. 2016) (quoting *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016)) (quotation marks omitted). The district court judge instructed the jury that it had to find Puri was, at the time of possession, an alien unlawfully and illegally in the United States. As always, we presume that the jury followed these instructions in reaching its guilty verdict. The judge did not, however, instruct the jury that it also had to find Puri *knew* he was an alien unlawfully and illegally in the United States at the time he possessed the firearm.

Puri argues on appeal that this error affected his substantial rights. He contends that had the jury received proper instructions, it could have concluded he did not know he belonged to the category of persons barred from possessing a firearm. The Government presented evidence supporting the

7

conclusion that Puri was aware of his unlawful status on the relevant date, and Puri presented no evidence at trial that could lead a jury to the opposite conclusion. Rather, Puri reaffirmed that, at the time he possessed the firearm, he believed that he was unlawfully present. The jury heard Puri's FBI interview (that occurred after the date of the gun possession in question), in which he stated he realized he overstayed his visa and was consequently in removal proceedings. Puri presented no contrary evidence of his state of mind in this respect on the date the offense was committed. Instead, he presented an argument in the nature of a legal position: that he actually was lawfully present due to an I-94 form he submitted. But when asked why he stated otherwise to the FBI officer, Puri explained, "Because at that time I didn't knew that this – this definition of what I-94 stands for, and I didn't knew that that time. . . . [A]t that time I didn't knew that ID is valid for your legalization or not." Puri thus affirmed that, at the time he possessed the firearm, he knew he belonged to the category of persons barred from possessing a firearm; the I-94 argument came later. Puri's current legal position that the I-94 form given to him meant he was legally in the country was both clearly incorrect and necessarily rejected by the jury when it implicitly found he was unlawfully present in the United States. Because the evidence supports Puri's mens rea at the time of the offense and he made no showing to the contrary, he cannot now contend the outcome of the proceeding would have been different but for the district court's error.

AFFIRMED.