IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 25, 2008

Charles R. Fulbruge III
Clerk

No. 06-20900

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

EFREN PATINO-PRADO, also known as Amado Martinez, also known as
Efrain Amador

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before KING, HIGGINBOTHAM, and SOUTHWICK, Circuit Judges.

PER CURIAM:

Efren Patino-Prado was convicted by a jury of conspiring to possess with intent to distribute marihuana and cocaine in violation of federal drug laws. On appeal he argues that there was insufficient evidence to sustain his conviction for the cocaine-related conspiracy and that improper jury instructions permitted the jury to convict him without unanimously agreeing as to the precise object of the alleged conspiracy. We find no error and affirm the conviction and sentence.

## I. Facts and Procedural Background

### A. The Conspiracy

There is evidence in the record to support the following version of events. In the summer of 1997, Patino-Prado approached Rafael Dominguez, Jr., about transporting a load of drugs from Texas to Chicago, Illinois. Unfortunately for Patino-Prado, the Federal Bureau of Investigation suspected that Dominguez Jr. was involved in drug trafficking from Mexico to the United States and had already begun an investigation into his activities. This investigation entailed the use of, among other things, court-authorized wiretaps and confidential informants. In early September 1997, the FBI began intercepting phone conversations between Dominguez Jr. and his father, Rafael Dominguez, Sr., regarding a large shipment of drugs from Texas to Chicago.

In mid-September, Patino-Prado, Dominguez Jr., and Dominguez Sr. met in Houston, Texas, to plan the transportation of the drugs. Patino-Prado agreed that one of his associates would drive the drugs from Texas to the outskirts of Chicago. Dominguez Jr. would arrange for a local driver to take the drug-laden tractor-trailer into the city and secure a warehouse where the truck could be unloaded. The drugs would be hidden in a load of imported limes. Both Dominguezes testified that Patino-Prado only discussed a "marihuana shipment" at this meeting; no one mentioned cocaine. The Dominguezes insist that they never agreed to transport cocaine.

After the meeting, Dominguez Jr. directed his aunt and uncle, who, unknown to him, were FBI informants, to make arrangements for a warehouse in Chicago. Dominguez Sr. arranged for a small market in Chicago to place an order for the limes. The use of the market enabled him to obtain a bill of lading that would permit the limes to pass through United States customs. Patino-Prado approved these arrangements and told Dominguez Sr. that he would place just under one ton of marihuana on the truck with the limes. Dominguez Jr.

hired Michael Cavazos to meet Patino-Prado's driver on the outskirts of Chicago and drive the tractor-trailer to the warehouse.

On September 27, the tractor-trailer bearing the limes departed for Chicago from Hidalgo, a south Texas town joined to Mexico by a bridge over the Rio Grande. On September 28, Dominguez Jr. flew to Chicago along with his aunt and uncle. On September 29, Patino-Prado met Dominguez Jr. at a restaurant in Chicago. During this meeting, Patino-Prado stated that he believed he was under surveillance. That belief caused Patino-Prado later in the day to inform Dominguez Jr. that he was leaving Chicago and that a person named "Leonel" would close the transaction in his stead. On September 30, Leonel contacted Dominguez Jr. and arranged a meeting for the next day.

On October 1, Leonel met Dominguez Jr. and took him to the tractor-trailer which was parked at a hotel on the outskirts of Chicago. Leonel gave Dominguez Jr. the keys to the truck and a partial payment for the warehouse. Dominguez Jr.'s driver, Cavazos, then took the truck from the hotel to an industrial park. After Dominguez Jr. inspected the warehouse and found it satisfactory, Cavazos drove the truck into the city. However, Cavazos had a difficult time maneuvering the tractor-trailer into the warehouse. Dominguez Jr. stopped traffic while Cavazos tried to back into the warehouse.

While assisting Cavazos's efforts to maneuver the tractor-trailer, Dominguez Jr. noticed a white vehicle drive past multiple times. Suspicious that the car was driven by law enforcement officers, Dominguez Jr. fled the scene along with his father and Leonel. Dominguez Jr. called Patino-Prado and told him what had happened. Patino-Prado advised him to leave the area. Later that day, the FBI searched the tractor-trailer and warehouse and seized 915 kilograms of marihuana and 245 kilograms of cocaine. After verifying that the warehouse had been raided, Dominguez Jr. informed Patino-Prado that the load of drugs had been seized. Patino-Prado requested proof of the seizure.

On October 2, news sources in Chicago carried reports of the warehouse raid and drug seizure. Leonel watched a television report and became concerned because the report noted only that marihuana was seized, making no mention of the cocaine. Leonel called Dominguez Jr. to inquire about the cocaine that had been hidden in the tractor-trailer. Dominguez Jr. told Leonel that he did not know anything about cocaine having been stashed in the truck. According to Dominguez Jr., Leonel responded with some surprise: "Efren [Patino-Prado] never told you?" Dominguez Jr. responded, "He never told me," and then ended the conversation out of fear that he was under surveillance.

On October 5, Dominguez Jr. met with Patino-Prado in Houston, Texas. Dominguez Jr. provided a newspaper clipping to prove that the drugs were seized and confronted Patino-Prado about the placement of cocaine in the tractor-trailer. According to Dominguez Jr., Patino-Prado apologized for not telling either of the Dominguezes about the cocaine. Apparently, Dominguez Jr. was not so much concerned about having transported cocaine as he was upset that he had done so unknowingly; he would have demanded a higher fee.

Two days later, Patino-Prado met Dominguez Jr. again and asked if he would be interested in moving some more cocaine. Dominguez Jr. said that he was. Patino-Prado said that he knew where he could get 25 kilograms of cocaine, but he had to check on the price. Dominguez Jr. reiterated that he was interested in transporting the cocaine. The two never met again; Dominguez Jr. never transported a second load of cocaine for Patino-Prado.

B. Indictment and Trial

In May 1998, a federal grand jury indicted Patino-Prado and five other individuals, including both Dominguezes, each on one count of conspiring to possess with intent to distribute marihuana and cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), & 846. For reasons that are not entirely clear, Patino-Prado was not immediately arrested. In fact, he did not make an initial

4

appearance before the district court until May 2005. The Dominguezes both pled guilty to the conspiracy charge. Patino-Prado pled not guilty. During his jury trial, a number of law enforcement agents testified regarding their investigation of Patino-Prado and his co-conspirators. Dominguez Jr. and Dominguez Sr. also testified against him. The jury returned a verdict of guilty. The district court denied Patino-Prado's motions for a judgment of acquittal made at the close of evidence and again after the verdict.

Patino-Prado was sentenced to 240 months in prison, the maximum sentence for conspiring to possess with intent to distribute an unspecified quantity of cocaine under 21 U.S.C. § 841(b)(1)(C). He was also given a three-year term of supervised release and ordered to pay $5,100 as fine and special assessment. Patino-Prado timely appealed his conviction and sentence.

## II. Discussion

Patino-Prado's appellate arguments may be summarized this way: (A) there was insufficient evidence to support a conviction for the cocaine-related conspiracy; (B) the jury instructions improperly permitted the jury to convict him without unanimously agreeing whether the object of the conspiracy involved marihuana or cocaine; and (C) alternatively, because the jury was not required to agree unanimously about the object of the conspiracy, his sentence must be reformed to the maximum length permissible for a marihuana-related conspiracy.

We will follow that order in analyzing the issues presented.

### A. Sufficiency of the Evidence

Because Patino-Prado raises a challenge to the sufficiency of the evidence after having properly moved for a judgment of acquittal, we consider whether a rational jury could have found the essential elements of the offenses beyond a reasonable doubt. United States v. Moreno, 185 F.3d 465, 471 (5th Cir. 1999). We view the evidence and the inferences that may be drawn in the light most

favorable to the verdict.  Id.  Credibility determinations, being the province of jurors, also are reviewed in the light most favorable to the verdict.  Id.  A "jury is free to choose among reasonable constructions of the evidence," even if some constructions are not "wholly inconsistent with every conclusion except that of guilt. . . ."  Id.  However, if the evidence "gives equal or nearly equal circumstantial support to a theory of guilt or innocence," the court should reverse because "under these circumstances a reasonable jury must necessarily entertain a reasonable doubt."  United States v. Ramos-Garcia, 184 F.3d 463, 465 (5th Cir. 1999) (citations and some internal quotation marks omitted).

Federal law criminalizes possession with intent to distribute a "controlled substance."  21 U.S.C. § 841(a)(1).  The essential elements of a violation of Section 841(a)(1) include: (1) knowledge, (2) possession, and (3) intent to distribute the controlled substance.  United States v. Delgado, 256 F.3d 264, 274 (5th Cir. 2001).  Drug type is not an element of Section 841(a)(1).  United States v. Gamez-Gonzalez, 319 F.3d 695, 699-700 (5th Cir. 2003).

To establish a conspiracy to violate Section 841(a)(1), the government must prove beyond a reasonable doubt: (1) the existence of an agreement between two or more persons to violate narcotics laws, (2) the defendant's knowledge of the agreement, and (3) his voluntary participation in the conspiracy.  United States v. Valdez, 453 F.3d 252, 256-57 (5th Cir. 2006).  "[A] defendant may be convicted on the uncorroborated testimony of a coconspirator who has accepted a plea bargain unless the coconspirator's testimony is incredible."  Id. at 257 (quotation marks omitted).  "Testimony is incredible as a matter of law only if it relates to the facts that the witness could not possibly have observed or to events which could not have occurred under the laws of nature."  Id. (quoting United States v. Bermea, 30 F.3d 1539, 1552 (5th Cir. 1994)).

At trial, Patino-Prado conceded his participation in a conspiracy to possess and distribute marihuana, but argued that he never agreed with anyone to

possess cocaine with intent to distribute and had no knowledge that the tractor-trailer contained cocaine.[1]  On appeal, he argues that the government adduced no evidence that the object of the conspiratorial agreement was cocaine.  The Government counters that there was overwhelming evidence of a cocaine-related conspiracy between Patino-Prado and others charged in the indictment.

The parties' dispute regarding cocaine is irrelevant as to whether there was sufficient evidence to sustain Patino-Prado's conviction for conspiracy under 21 U.S.C. §§ 841(a)(1) and 846.  This court has recognized that to obtain a conviction under Section 841(a)(1), "the government is not required to prove that a defendant knew the exact nature of the substance with which he was dealing; it is sufficient that he was aware that he possessed some controlled substance." United States v. Gonzalez, 700 F.2d 196, 200 (5th Cir. 1983).  In United States v. Fragoso, 978 F.2d 896 (5th Cir. 1992), we extended that rationale to the crime of conspiring to possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 846.  Id. at 902.  Under Section 846, the government must demonstrate beyond a reasonable doubt that the defendant conspired to possess with intent to distribute some controlled substance.  See id.

Here, the indictment charged Patino-Prado with conspiring to possess with intent to distribute marihuana and cocaine.  Patino-Prado conceded his involvement in a marihuana-related conspiracy at trial and has not sought to undo that concession on appeal.  Therefore, the government has proven – in fact, it is undisputed – that Patino-Prado conspired with at least one other person to possess with intent to distribute one of the controlled substances (marihuana)

---

[1] During opening argument at trial, defense counsel made the following statements: "Mr. Patino-Prado was involved in a marihuana conspiracy.  There is no doubt about it.  He accepts responsibility for that. . . .  Mr. Patino-Prado, yes, he was involved in a marihuana conspiracy.  He had nothing to do with the cocaine, he didn't know the cocaine was there until after it was found by the police."

alleged in the indictment. The elements of conspiracy under Section 846 to violate Section 841(a)(1) have been sufficiently proven.

B. Jury Unanimity as to Object of Conspiracy

At trial, Patino-Prado objected to the following instruction:

> The government must prove beyond a reasonable doubt that the defendant conspired to possess with intent to distribute some controlled substance, but need not prove that the defendant knew which particular controlled substance was involved.

The district court overruled his objection. This instruction was taken from this court's pattern criminal jury instructions. Fifth Circuit Pattern Jury Instruction: Criminal § 2.89 (Note). We preview, as an aid to clarity, that there is an important pair of special interrogatories that were given the jurors on the verdict form that did require them to determine whether marihuana, cocaine, or both were the object of the conspiracy. Those interrogatories were to be used only after a finding of guilt of the more general-object conspiracy and are therefore primarily relevant as to the sentencing issue we will discuss below.[2]

Patino-Prado argues that this and related jury instructions were flawed because they did not require unanimous agreement as to the precise object of the charged conspiracy. This argument draws directly from the argument on evidentiary sufficiency that we have already discussed, but we review it

---

[2] The government argues that Patino-Prado invited any error that may have produced a less-than-unanimous jury verdict (as to which particular controlled substance was the object of the conspiracy) because he opposed a unanimity instruction following the special interrogatories. According to the government, Patino-Prado may not ask this court to correct an error which he induced the district court to commit. See United States v. Lopez-Escobar, 920 F.2d 1241, 1246 (5th Cir. 1991). Patino-Prado's counsel did, in fact, oppose the placement of a sentence on the verdict form reiterating that the jury must be unanimous in its answers to the special interrogatories. His stated reason for doing so was a concern that jurors may believe the placement of a reiterating instruction would suggest that jurors must be unanimous as to a "no" answer as well as a "yes" answer. The district court heeded Patino-Prado's request and removed the objected-to portion of the verdict form. However, Patino-Prado did properly object to the instruction that we set forth in the text above. It is this instruction and objection on which he bases his appeal. Because Patino-Prado properly preserved his allegation of error, we must review it on appeal.

separately if not without some overlapping analysis. We review Patino-Prado's challenge to the jury instructions for an abuse of discretion. United States v. Clayton, 506 F.3d 405, 410 (5th Cir. 2007). "A district court has broad discretion in framing the instructions to the jury and this Court will not reverse unless the instructions taken as a whole do not correctly reflect the issues and law." Id.

We have already shown that Patino-Prado need not have known that he possessed both controlled substances alleged in the indictment in order to be convicted under Section 841(a). In one precedent, we approved a supplemental instruction to the effect that the jury "could convict [the defendant] for possession of heroin if it believed beyond a reasonable doubt that he knew there was some controlled substance in the car, whether or not he knew it was actually heroin or some other drug or narcotic. . . ." Gonzalez, 700 F.2d at 200 (internal quotation marks omitted). The knowledge required for guilt is that the defendant knew he possessed a controlled substance, regardless of whether he was right, wrong, or unaware regarding which substance. Similarly, jury unanimity must be about the accused's general knowledge – since that is what guilt is based upon – regardless of what version of the alternatives each individual juror might accept.

Patino-Prado relies on numerous cases holding that when the government charges a defendant with a "multi-object conspiracy," the jury must unanimously agree as to at least one object of the conspiracy in order to return a conviction. See United States v. Capozzi, 486 F.3d 711 (1st Cir. 2007); United States v. Sharpsteen, 913 F.2d 59 (2d Cir. 1990); United States v. Fisher, 106 F.3d 622 (5th Cir. 1997) abrogated on other grounds by Ohler v. United States, 529 U.S. 753 (2000); United States v. Pierce, 479 F.3d 546 (8th Cir. 2007). But all of these cases involved indictments alleging multi-object conspiracies where the defendants were accused of conspiring to violate multiple statutes by a single course of action. In this case, Patino-Prado is accused of conspiring to violate a

single federal drug statute. The single object of the alleged conspiracy was the possession with intent to distribute a controlled substance; both marihuana and cocaine are controlled substances. As noted above, there is overwhelming and undisputed evidence to support Patino-Prado's conviction for a marihuana-related conspiracy.

In one precedent relied upon by Patino-Prado, one of the legal theories submitted to the jury as a basis for a conspiracy conviction under federal wire fraud statutes was flawed because the statute did not extend to the facts of the case. United States v. Brown, 459 F.3d 509, 517 (5th Cir. 2006). We reversed the conviction because the general jury verdict left open the possibility that the defendants were convicted on the basis of this impermissible theory. Id. at 519-23. Such a defect does not exist in Patino-Prado's conviction.

In another cited case, the defendant's sentence was vacated under Section 841(b)(1)(B)'s cocaine-related maximum where a general verdict did not clearly reveal that the jury found the defendant guilty of conspiring to possess both marihuana and cocaine. United States v. Dale, 178 F.3d 429, 432-34 (6th Cir. 1999). Dale did not reverse the judgment of conviction. The relevant sentencing issue will be discussed in the last section of our opinion. Dale is not implicated because of specific findings made by the jurors here.

The cases cited by Patino-Prado do not stand for the proposition that, if the government alleges that a defendant conspired to possess several controlled substances, the jury must unanimously agree about each of the several controlled substances the defendant's conspiracy was actually aimed at possessing. See United States v. Toliver, 351 F.3d 423, 431 (9th Cir. 2003) ("The jury's inability to determine the quantity or type of drugs involved in the conspiracy did not justify an acquittal; it only prevented the district court from imposing a sentence that exceeded 20 years, the maximum allowable sentence under section 841(b)(1)(C) when the offense involves an unknown quantity of

drugs."). To the contrary, to obtain a conviction under the knowledge element of Section 846, the government is only required "to show that the defendant knew that the substance was a controlled substance." United States v. Cartwright, 6 F.3d 294, 303 (5th Cir. 1993).

We also note that this case is a peculiarly inappropriate one for challenging the precedents involving the scope of jury unanimity on controlled substance conspiracies. Because of the jury interrogatories that we analyze in the next section, we have the jurors' acknowledgment that they were unanimous both as to the cocaine and the marihuana conspiracies.

C. The Sentence

We turn now to Patino-Prado's final argument, that his sentence should be vacated or reformed. As we have noted, Patino-Prado was indicted for conspiracy to possess with intent to distribute marihuana and cocaine. No specific amounts were alleged in the indictment and the jury was not instructed to make any findings as to the particular amount of narcotics involved in the conspiracy. Likely because the indictment was filed prior to the Supreme Court's decision Apprendi v. New Jersey, 530 U.S. 466 (2000), it did not allege that any specific amounts of marihuana and cocaine were the object of the conspiracy.[3] The trial court rejected a jury instruction proposed by the government that would have required findings as to the amount of drugs involved in the offense. Thus, Patino-Prado cannot be subjected to the quantity-specific enhanced penalties under Section 841(b)(1)(B). See United States v. Doggett, 230 F.3d 160, 164-65 (5th Cir. 2000).

Even without a jury finding of a specific quantity of a drug, a defendant may receive up to a five-year sentence for conspiring to possess with intent to

---

[3] After Apprendi, courts have required that drug quantities be alleged in the indictment and proven beyond a reasonable doubt at trial before a defendant may be subjected to the enhanced penalties under 21 U.S.C. § 841(b)(1)(B). United States v. Doggett, 230 F.3d 160, 164-65 (5th Cir. 2000).

distribute an unknown quantity of marihuana. See 21 U.S.C. § 841(b)(1)(D); see United States v. Allen, 302 F.3d 1260, 1268 n.32 (11th Cir. 2002). The maximum sentence for conspiring to possess with intent to distribute an unknown quantity of cocaine is twenty years. See 21 U.S.C. § 841(b)(1)(C).

Patino-Prado was sentenced under Section 841(b)(1)(C) to 240 months (or twenty years) in prison. He argues, that even if his conviction stands, his sentence must be either vacated or reformed to five years, the maximum penalty permissible for conviction of a marihuana-related conspiracy under 21 U.S.C. § 841(b)(1)(D). According to Patino-Prado, this is necessary because it is unclear whether the jury unanimously found that cocaine was one of the objects of Patino-Prado's conspiracy.

Though our analysis regarding conviction discussed the acceptable ambiguity regarding which of the controlled substances was actually involved in a conspiracy, the rule as to sentencing is different. On the verdict form, jurors were instructed that if they determined Patino-Prado was guilty of the general conspiracy, they were then required also to mark on the verdict form their answers to these questions about which controlled substances were the object of the conspiracy:

> If you found the Defendant Efren Patino Prado GUILTY of Count One of the Superseding Indictment, you must answer the following questions.
> 1. Do you find beyond a reasonable doubt that the conspiracy alleged involved a mixture or substance containing a detectable amount of cocaine?
> 2. Do you find beyond a reasonable doubt that the conspiracy alleged involved a mixture or substance containing a detectable amount of marihuana?

The foreman recorded the jury's answer as "yes" to both of these questions. The jurors had in other parts of the instructions been told that their "verdict must be unanimous" and that "[t]he foreperson will write the unanimous answer of the jury in the space provided for in each count of the Superseding Indictment,

either guilty or not guilty." We find no doubt that jurors would have understood that unanimity was required for the interrogatory answers as well.

We will presume that jurors understand and follow their instructions, abandoning that presumption only when there "is an overwhelming probability that the jury will be unable to follow the instruction and there is a strong probability that the effect is devastating." United States v. Barksdale-Contreras, 972 F.2d 111, 116 (5th Cir. 1992). Patino-Prado has offered no sound reason for this court to reject the presumption that the jury unanimously agreed on the answer for each of the special interrogatory questions.

In addition, the government presented sufficient evidence to support the jury's verdict. We are mindful that a conspiratorial agreement to possess a controlled substance "may be implicit" and "[t]he jury may rely on presence and association, along with other evidence" in reaching its verdict. United States v. Montgomery, 210 F.3d 446, 449 (5th Cir. 2000). "[P]roof of an overt act in furtherance of the conspiracy is not required." Id. There was evidence that Patino-Prado's coconspirators were aware that cocaine was being transported along with the marihuana. Dominguez Jr. testified regarding his post-seizure confrontation with Patino-Prado about the presence of cocaine in the tractor-trailer and Patino-Prado's apologetic response. Dominguez Jr. also testified that Patino-Prado made a direct overture to him regarding transporting cocaine in the future and that he (Dominguez Jr.) agreed to do so. There was also circumstantial evidence that Dominguez Jr. knew he was transporting both marihuana and cocaine from Texas to Chicago. The circumstantial evidence includes Dominguez Jr.'s "paranoid" behavior in Chicago, which the government argues was an indication that he knew he was dealing with more than mere marihuana. Further, there was evidence that drug traffickers often hide more serious drugs, such as cocaine, in loads of marihuana and that Dominguez Jr. was familiar with this practice.

For these reasons, we find that the district judge did not err in determining that the jury found Patino-Prado guilty beyond a reasonable doubt of conspiring to possess with intent to distribute both marihuana and cocaine. As such, the district judge selected the correct statutory maximum sentence for an unknown quantity of cocaine – twenty years under Section 841(b)(1)(C).

We AFFIRM the conviction and the sentence.