REVISED MARCH 30, 2010
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 12, 2010

Charles R. Fulbruge III
Clerk

No. 08-41362
Summary Calendar

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

EDICA EDIT VAZQUEZ; ZONIA S VASQUEZ

Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:08-cr-00745

Before REAVLEY, DAVIS, and STEWART, Circuit Judges.

PER CURIAM:[*]

Sisters Zonia Vasquez and Edica Vazquez[1] were caught at the Laredo border towing a trailer loaded with 124 kilograms of marijuana. They were convicted by a jury of conspiracy to possess with intent to distribute in excess of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Because of their common last name, we refer to each defendant by her first name.

100 kilograms of marijuana, possession with intent to distribute in excess of 100 kilograms of marijuana, and importation of in excess of 100 kilograms of marijuana. The district court sentenced Edica and Zonia on the basis of 400 to 700 kilograms of marijuana. The court relied on the assumption that on prior trips in which Edica and Zonia crossed the border hauling a trailer, as recorded by border cameras, that trailer contained marijuana. We AFFIRM.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Conviction, Sentencing, and Appeal

Zonia and Edica were indicted on charges of conspiracy to possess with intent to distribute in excess of 100 kilograms of marijuana, possession with intent to distribute in excess of 100 kilograms of marijuana, and importation of in excess of 100 kilograms of marijuana. Zonia and Edica stipulated that 121 kilograms of marijuana had been concealed in hollowed-out planks in the bed of the trailer that they were towing across the border. After a joint trial, the jury convicted both women on all counts.

The district court sentenced Edica and Zonia on the basis of 400 to 700 kilograms of marijuana, relying on the assumption that on prior trips in which they crossed the border hauling a trailer, as recorded by border cameras, the trailer contained marijuana. The district court sentenced Edica to 86 months of imprisonment on each count, to be served concurrently, and five years of supervised release. The court sentenced Zonia to 97 months on each count, to be served concurrently, and five years of supervised release.

Edica and Zonia timely appealed as to whether: (1) the evidence was sufficient to support convictions for conspiracy, possession with intent to distribute marijuana, and importation; (2) the district court erred by admitting evidence of their prior border crossings with the trailer, where there was no proof that they transported marijuana on those prior occasions; and (3) the district court erred by holding them responsible for marijuana estimated to have

been smuggled during their prior crossings, under a theory of relevant conduct and mathematical extrapolation.

## B. Evidence at Trial

The evidence presented by the Government at trial established that in May 2008, Zonia drove her Chevrolet Tahoe, that was towing a homemade flatbed trailer, across the international bridge from Mexico to Laredo, Texas. Edica was a passenger in the front seat, and Zonia's daughter was a passenger in the back. When routinely stopped at the border and questioned by a Customs and Border Protection (CBP) officer, Zonia was stoic and explained that they had gone to Mexico to drop off tables and chairs for a party. Zonia told the CBP officer that the trailer belonged to a friend of hers, Pancho, who was in Nuevo Laredo, Mexico. Edica, who was very excited and "appeared to be too friendly," interrupted and explained that she was getting a ride to work.

The CBP officer testified that people are usually in a bad mood when they come across the bridge. According to the officer, he felt that "something didn't seem right." He inspected the trailer and noticed that its wooden planks appeared twice as thick as usual. The officer testified that he had seen another trailer loaded with contraband that had a similar appearance.

Immigration and Custom Enforcement (ICE) agents further questioned the women, and testified at trial that Zonia told them that she needed a trailer to transport tables and chairs from the Laredo Country Club, where she worked, to her home in Laredo, as she was planning a party for her son. Zonia said that her former mother-in-law had introduced her over the phone to Pancho, who had a trailer that she could borrow if she picked it up in Nuevo Laredo. After Zonia dropped off her daughter and another person in downtown Nuevo Laredo to shop, she picked up the trailer from Pancho, but she could not remember exactly where. Zonia then picked up her passengers and headed back into the United States. Pancho had instructed Zonia to leave the trailer at the H.E.B. store

parking lot in Laredo when she was through using it. When the ICE agents told Zonia that marijuana had been found in the trailer, she slumped her shoulders and kept quiet for about five minutes. She then told the agents that she had taken the trailer, loaded with tables and chairs, to Nuevo Laredo, where she had delivered the tables and chairs to her mother-in-law's house, and that she was returning the empty trailer. The agents told her that they would check her story against photographs taken by cameras at the border crossings. Zonia seemed surprised about the cameras. She then went back to her original story, telling the agents that she had picked up the trailer from Pancho in Nuevo Laredo and was taking it to the United States to use to transport tables and chairs.

Edica initially told the agents that she and Zonia's daughter had walked from Laredo to Nuevo Laredo with an elderly aunt, whom they had dropped off at a downtown home. As they were walking back, someone who was driving a Tahoe and towing a trailer gave them a ride. When the agents told Edica that drugs had been found in the trailer and falsely told her that Zonia had already told them what had happened, Edica changed her story. Edica explained that, earlier that day, she had talked with "someone" at her home and they had arranged to pick up a trailer in Nuevo Laredo that was going to be loaded with narcotics. Edica's partner was to be paid about $6,000 for her participation, and from that Edica was to be paid $2,000 to $3,000. They had agreed to drop off the trailer at the H.E.B. parking lot in Laredo, and Edica had left her car at the parking lot so she could drive to work later. Edica's partner picked her up from the H.E.B. parking lot, and they and Edica's niece traveled into Mexico. Pancho, whom Edica said she had never seen before, connected the trailer.

Over the defendants' objections, the Government presented photographs showing that Zonia had towed the trailer through the Border Patrol Checkpoint located north of Laredo, Texas, on Interstate Highway 35, at least five times between September 2007 and April 2008. On at least three of those occasions,

Zonia had traveled from Mexico into the United States about an hour before reaching the checkpoint. The Government also presented evidence showing that Edica had towed the trailer with her vehicle through the checkpoint at least six times during that period and on five of those occasions had crossed the border about an hour before reaching the checkpoint. An ICE agent and a CBP officer testified that there was no reason to believe that there were drugs in the trailer on these previous trips, and that there was a good chance that the drug dogs would have detected them if there had been. The district court instructed the jury that this similar-act evidence could not be considered in deciding whether the defendants had committed the charged offenses, but could be considered with regard to the defendants' states of mind, intent, plan, or whether the charged acts were committed by mistake.

At trial, Zonia claimed that she did not know there was marijuana hidden in the trailer. Zonia testified that she and her children lived in Laredo with her sister Edica and other family members. In May 2008, she had intended to borrow some tables and chairs from the Laredo Country Club, where she worked, for a birthday party at her house. She testified that she had known Pancho for several years, but she did not know his phone number. Pancho called her at work on May 2, 2008, and Zonia arranged to borrow a trailer from him. On May 3, Zonia and her daughter picked up Edica in downtown Laredo and drove to Nuevo Laredo, Mexico. Zonia dropped off her daughter and Edica downtown to shop, and then met Pancho at a Holiday Inn. Pancho hooked up the trailer, and instructed Zonia to drop the trailer off at the H.E.B. in downtown Laredo when she was finished using it. The trailer had one table and about five chairs on it, and Pancho asked Zonia to deliver the table and chairs to some people at a local park. After she made the delivery, Zonia picked up her daughter and Edica.

Zonia acknowledged that she had towed the same trailer into the United States on prior occasions, including the week before her arrest. On that date, she

and Edica had taken the trailer to haul "stuff" from a flea market in San Antionio. Pancho was at the flea market and needed the trailer, so they left their stuff with him.

## II. DISCUSSION

### A. Sufficiency of the Evidence

Both Edica and Zonia challenge the sufficiency of the evidence to support their convictions on all three counts. They preserved this issue by moving for judgments of acquittal at the close of the Government's case-in-chief and at the close of all evidence. Accordingly, review is de novo. United States v. Percel, 553 F.3d 903, 910 (5th Cir. 2008).

This court will uphold the jury's verdict if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt. Id. at 910. This court "view[s] the evidence in the light most favorable to the verdict and draw[s] all reasonable inferences from the evidence to support the verdict." Id. (quotation marks and citation omitted). This court does "not weigh evidence or assess the credibility of witnesses, and the jury is free to choose among reasonable constructions of the evidence." United States v. Ramos-Cardenas, 524 F.3d 600, 605 (5th Cir. 2008). "Nonetheless, the government must do more than show that the defendants 'could have been guilty.'" Id. (citation omitted). Reversal is required "if the evidence tends to give equal or nearly equal circumstantial support to guilt and to innocence." Id.

### 1. Evidence of Agreement and Participation

Edica first argues that the evidence was insufficient to support her conspiracy conviction because it failed to show that she agreed with Zonia to possess and transport a controlled substance or that she "participated" in the conspiracy. She contends that her mere presence in Zonia's truck while Pancho hooked the trailer to it was insufficient to prove either an agreement or her

participation. She asserts that, to the extent she stated that she was going to be paid $2,000 to $3,000, the question remains, "what for?"

To support a conviction for conspiracy to possess with intent to distribute a controlled substance, the Government must prove an agreement between two or more people to violate narcotics laws, the defendant's knowledge of the agreement, and the defendant's voluntary participation in the conspiracy. United States v. Patino-Prado, 533 F.3d 304, 309 (5th Cir. 2008). Although Edica asserts that the Government did not prove all three of these elements, she makes no argument about the second element; she challenges only the sufficiency of the evidence to show an agreement and her voluntary participation. See United States v. Stalnaker, 571 F.3d 428, 433 (5th Cir. 2009) ("Where a defendant asserts that the evidence was insufficient to convict him but fails to make any argument whatsoever to support this contention, the issue is considered abandoned.") (internal quotation marks and citation omitted).

The agreement element was proved by Edica's admission to the ICE agents that she and another person agreed to pick up a trailer in Nuevo Laredo that was going to be loaded with drugs. The evidence showed that Edica participated in the conspiracy by traveling to Nuevo Laredo and accompanying Zonia when the trailer loaded with drugs was hooked to Zonia's vehicle. To the extent this shows that Edica was merely present, there was other circumstantial evidence that supports an inference of her participation. See Percel, 553 F.3d at 910 ("Though mere presence at a crime scene is insufficient to support an inference of participation in a conspiracy, the jury may consider presence and association, along with other evidence, in finding conspiratorial activity by the defendant."). Edica admitted that she was going to paid a portion of her coconspirator's payment for picking up the trailer. It is implausible that Edica would be paid between $2,000 and $3,000 if she was not participating in the conspiracy. Additionally, Edica told the agents that she had left her car at the H.E.B.

parking lot in Laredo, where she and her coconspirator were to leave the trailer. A reasonable jury could conclude from this evidence that both the agreement and participation elements of Edica's conspiracy conviction were established beyond a reasonable doubt. Jackson v Virginia, 443 U.S. 307, 319 (1979).

### 2. Evidence of Possession

Edica also argues that the evidence was insufficient to support her conviction for possession with intent to distribute marijuana conviction. She claims that there was no evidence that she possessed or exercised control over the marijuana, the trailer, or the vehicle towing the trailer, or that she acted through Zonia.

To support this conviction, the Government had to prove that Edica knowingly possessed a controlled substance with intent to distribute it. Patino-Prado, 533 F.3d at 309. "Possession may be actual or constructive, may be joint among several defendants, and may be proven by direct or circumstantial evidence." Ramos-Cardenas, 524 F.3d at 605. "Constructive possession may be shown by ownership, dominion or control over the contraband itself, or dominion or control over the premises or the vehicle in which the contraband was concealed." United States v. Salinas-Salinas, 555 F.2d 470, 473 (5th Cir. 1977). "Existence of a 'working relationship' between [the defendants] would support an inference of such dominion or control." United States v. Galvan, 693 F.2d 417, 421 (5th Cir. 1982).

The evidence showed that Zonia, the owner of the vehicle towing the trailer and the one who picked up the trailer from Pancho, had constructive possession of the drugs in the trailer. The evidence of the conspiracy between Edica and Zonia to possess with intent to distribute marijuana, discussed above, and Edica's presence while the trailer was hooked up show the existence of a "working relationship" with Zonia, sufficient to support an inference that Edica exercised joint dominion or control over the drugs. United States v. Moreno, 649

8

F.2d 309, 313 (5th Cir. 1981). A reasonable jury could conclude from this evidence that the possession element of this offense was established beyond a reasonable doubt. Jackson, 443 U.S. at 319.

### 3. Evidence of Importation

Edica argues that because there was no evidence of her participation in the conspiracy and no evidence of her possession of the marijuana, the evidence was insufficient to support her importation conviction. To prove importation, the Government had to establish that: "(1) the defendant played a role in bringing a quantity of a controlled substance into the United States from outside of the country; (2) the defendant knew the substance was controlled; and (3) the defendant knew the substance would enter the United States." United States v. Moreno, 185 F.3d 465, 471 (5th Cir. 1999); see 21 U.S.C. § 952(a). As addressed above, the evidence shows both her participation in the conspiracy and possession of the marijuana. This same evidence shows that Edica played a role in bringing the marijuana into the United States.

### 4. Evidence of Knowledge

Zonia asserts that the evidence was insufficient to prove her knowledge, an element of each of her offenses of conviction. See Patino-Prado, 533 F.3d at 309 (conspiracy and possession with intent to distribute); Moreno, 185 F.3d at 471 (importation). However, the object of the knowledge differs for each offense. The conspiracy offense required proof of the defendant's knowledge of the agreement to violate narcotics laws. Patino-Prado, 533 F.3d at 309. The possession offense required proof that the defendant knowingly possessed a controlled substance, while the importation offense required that the defendant knew that the substance she was importing was a controlled substance. United States v. Igbinosun, 528 F.3d 387, 392-93 (5th Cir.), cert. denied, 129 S. Ct. 725 (2008). Zonia's arguments challenge only the sufficiency of the evidence to show

that she knew of the marijuana hidden in the trailer. See Stalnaker, 571 F.3d at 433 (holding that inadequately briefed sufficiency claims are waived).

Ordinarily, knowledge of drugs can be inferred from the defendant's control over the vehicle in which the drugs are found; "however, when the drugs are hidden, control over the vehicle alone is not sufficient to prove knowledge." United States v. Mendoza, 522 F.3d 482, 489 (5th Cir. 2008). In such cases, "this court requires other circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge." Id. "This is so because it is at least a fair assumption that a third party might have concealed the controlled substances in the vehicle with the intent to use the unwitting defendant as the carrier in a smuggling enterprise." United States v. Ramos-Garcia, 184 F.3d 463, 465 (5th Cir. 1999). This also applies to contraband hidden in a trailer. United States v. Garcia-Flores, 246 F.3d 451, 454 (5th Cir. 2001). Such other evidence "may include nervousness, conflicting statements to law enforcement officials, and an implausible story." United States v. Jones, 185 F.3d 459, 464 (5th Cir. 1999). Inconsistent statements to border patrol officers regarding the defendant's method of travel and purpose of the trip "are well-recognized circumstantial evidence of guilty knowledge." Mendoza, 522 F.3d at 489-90.

Zonia's inconsistent statements given to the CBP officers and ICE agents about her use of the trailer and the purpose of her trip were evidence of her guilty knowledge. Id. She argues that she testified that the officers and agents either misunderstood her or lied about what she said. Whether to believe the law enforcement officers' testimony over Zonia's testimony was a question for the jury. Ramos-Cardenas, 524 F.3d at 605. Zonia further argues that her testimony that Pancho asked her to use the drug-filled trailer to deliver a table and chairs to unnamed people in a park was plausible. Again, this was a question for the jury. Id. The jury could also infer guilty knowledge based on the quantity and value of the drugs, over 121 kilograms of marijuana valued between $15,000 and

$39,000, which is unlikely to have been entrusted to an unsuspecting driver. Garcia-Flores, 246 F.3d at 455. A reasonable jury could conclude from all of this evidence that the knowledge element of Zonia's possession conviction was established beyond a reasonable doubt. Jackson, 443 U.S. at 319.

### 5. Reliance on Hearsay Evidence

Zonia also notes that the Government tried to make its case through hearsay evidence of Edica's statements to the CBP officers that were too vague to rise to the level of proof beyond a reasonable doubt. However, the district court instructed the jury not to consider Edica's statements in any way with respect to Zonia. Juries are presumed to follow their instructions. Patino-Prado, 533 F.3d at 313. Moreover, the Government did not refer to this evidence in its closing arguments regarding Zonia's guilt.

Zonia argues that Bruton v. United States, 391 U.S. 123 (1968), "and its progeny place little or no value on this type of testimony because it is testimony that remains untested by cross-examination." She contends that the admission of this unobjected-to evidence of Edica's statements should be reviewed for plain error to determine whether it had a significant impact on the finding of guilt. However, she makes no further argument regarding the admission of these statements. An appellant's brief must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." FED. R. APP. P. 28(a)(9)(A). Although she cites Bruton, Zonia does not provide any reasons for her contention that the use of Edica's statements violated Bruton or that the use of those statements had a significant impact on the finding of guilt. Thus, she has waived any Bruton-violation argument by failing to adequately brief it. See Yohey v. Collins, 985 F.2d 222, 224-25 (5th Cir. 1993) (issues not briefed adequately are waived); see Stalnaker, 571 F.3d 428, 433 (applying waiver rule in direct criminal appeal).

### B. Evidence of Prior Crossings with a Trailer

Edica and Zonia next argue that the district court erred by admitting evidence of their prior border and checkpoint crossings with the trailer because there was no proof that they transported marijuana on those prior occasions. The Government avers that it proved that the defendants hauled the trailer and that it was not required to prove that the defendants transported marijuana on these prior occasions.

As required by Federal Rule of Evidence 406(b), the Government notified the defendants before trial of its intent to offer this evidence. Both defendants filed motions in limine and objected at trial to the use of this evidence. The district court overruled the defendants' objections, finding that, under Federal Rule of Evidence 404(b), the prior acts did not have to be bad acts and the evidence was admissible to show knowledge or lack of mistake.

Relevant evidence "is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by [the Federal Rules of Evidence], or by other rules prescribed by the Supreme Court pursuant to statutory authority." FED. R. EVID. 402. Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of the person in order to show action in conformity therewith." FED. R. EVID. 404(b). However, such evidence may be still admissible for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. "The purpose of Rule 404(b) is to 'guard against the inherent danger that the admission of 'other acts' evidence might lead a jury to convict a defendant not of the charged offense, but instead of an extrinsic offense.'" United States v. Stephens, 571 F.3d 401, 409 (5th Cir. 2009) (quoting United States v. Sumlin, 489 F.3d 683, 689 (5th Cir. 2007)).

This court reviews a decision to admit Rule 404(b) evidence under an abuse of discretion standard. United States v. McCall, 553 F.3d 821, 827 (5th Cir. 2008). Such review is necessarily heightened in a criminal case, however,

12

which demands that evidence be strictly relevant to the particular offense charged. Id. Nevertheless, erroneous admissions under Rule 404(b) are subject to a harmless error inquiry if abuse is found. Id. An error is harmless when it does not affect the substantial rights of the defendant. Id.

This court applies the two-step test outlined in United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978) (en banc), to determine whether the district court erred in admitting extrinsic evidence.[2] McCall, 553 F.3d at 827. "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [R]ule 403." Beechum, 582 F.2d at 911.

### 1. Relevance of the Extrinsic Evidence

Evidence is relevant "if it makes the existence of any fact at issue more or less probable than it would be without the evidence." United States v. Williams, 900 F.2d 823, 826 (5th Cir. 1990). But whether extrinsic evidence is relevant under Rule 404(b) "is a function of its similarity to the charged offense." Beechum, 582 F.2d at 911 (quotation marks and citation omitted). "[S]imilarity, and hence relevancy, is determined by the inquiry or issue to which the extrinsic offense is addressed." Id. For example, if the issue is intent, then the extrinsic evidence of a prior act is relevant if it required the defendant have the same state of mind or intent as the charged offense; if the issue is knowledge then extrinsic act evidence must "be of such a nature that its commission involved the same knowledge required for the offense charged." Id. at 911, 912 n.15.

---

[2] "Rule 404(b) is only implicated when the offered evidence is extrinsic; evidence intrinsic to the charged offense does not implicate the rule." United States v. Crawley, 533 F.3d 349, 353-54 (5th Cir. 2008). "'Other acts' evidence is intrinsic when it is inextricably intertwined with the charged offense, when both acts are part of the same criminal episode, or when the 'other act' was a necessary preliminary step toward the completion of the charged crime." Id. at 354. None of the parties argue that the evidence at issue was intrinsic.

"[S]imilar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." Huddleston v. United States, 485 U.S. 981, 689 (1988) (citing Beechum, 582 F.2d at 911). This court has held that evidence of a prior drug smuggling attempt using the defendant's trailer was not admissible under Rule 404(b) to show the defendant's knowledge of drugs hidden in his trailer, where there was no evidence that the defendant committed the prior smuggling offense. United States v. Gonzalez-Lira, 936 F.2d 184, 190 (5th Cir. 1991); but see id. at 193 (evidence of defendant's trailer's involvement in the prior smuggling operation should be admissible under Rule 406(b) to demonstrate defendant's "knowledge and absence of mistake") (Garwood, J., concurring).

Because the prior act must be similar to that at issue in the charged offense, both the Supreme Court and this court have required that the prior offense be a bad act in order to be relevant to prove criminal intent. For example, in Huddleston v. United States, the Supreme Court held that at the defendant's trial for selling stolen videotapes, where the contested issue was whether the defendant knew that the videotapes were stolen, the defendant's prior sales of televisions that he likely knew were stolen was relevant only because the Government presented evidence showing that the televisions had in fact been stolen. 485 U.S. at 689, 691. In Beechum, this court held that evidence that the defendant had, for ten months, wrongfully possessed credit cards belonging to other people was relevant to whether the defendant intended to turn in a silver dollar stolen that day from the mail. 582 F.2d at 916. The court reasoned that the wrongful possession of the credit cards required the same intent, or state of mind, as the wrongful possession of the silver dollar. Id.

However, Rule 404(b) covers "other crimes, wrongs, or acts," and this court stated in United States v. Williams that "'[o]ther act' extrinsic evidence need not be evidence of other wrongful acts but may be evidence of any extrinsic acts

relevant to the criminal act charged." Williams, 900 F.2d at 826 n.2. In Williams, a package of cocaine bearing a fictitious return address was delivered by mail to an address in New Orleans on March 7. Id. at 825. The defendant then arrived at that address to recover the package. Id. The defendant was arrested and indicted with drug trafficking, although he insisted that he expected the package to contain a shipment of jogging suits for resale. Id. At trial, the Government had sought to introduce evidence of nineteen prior, similar packages that had been mailed to various addresses in New Orleans. Id. at 825. Relying on Huddleston, the district court granted the defendant's motion to exclude the evidence regarding the other mailings on the basis that the presence of cocaine in the prior mailings was not supported by sufficient evidence. Id. at 826.

This court applied the Beechum analysis and concluded that extrinsic evidence of the nineteen prior packages was admissible under Rule 404(b). Id. at 825-27. On the relevance prong, the court reasoned that the evidence of the prior mailings would be relevant to the defendant's knowledge of the contents of the March 7 package and intent to perpetrate the crime if: "1) there existed a pattern of mailings similar to the March 7 mailing, and 2) the defendant was involved in those mailings." Id. at 826. "If a jury could reasonably find those conditional facts by a preponderance of the evidence, then the extrinsic evidence of the prior mailings would contribute to a showing of knowledge and intent through demonstration of a modus operandi." Id. The court held that the district court erred by requiring that, to establish the relevancy of extrinsic evidence, the Government had to offer evidence of the presence of cocaine in the prior mailings. Id. at 826. The court explained that:

> Even if the prior mailings did not contain cocaine, they may still be relevant to show modus operandi. They might, for example, have been used to test whether packages with fictitious return addresses would be delivered without incident. Because we find that the presence of cocaine was not a fact upon which relevancy of the

extrinsic evidence is conditioned, and because we find sufficient evidence to support jury findings that there existed a pattern of mailings similar to the March 7 mailing and that defendant was involved in those prior mailings,[3] we find that the relevancy prong of the Beechum test is met in this case.

Id. Under the abuse of discretion standard, the court reversed the district court's exclusion of the evidence of the prior mailings of similar packages. Id. at 827.

Under the circumstances of the instant case, Williams controls. As Edica and Zonia argue, here there was no evidence presented at trial that any of their prior border-crossing trips involved marijuana and the ICE agent and CBP officer testified that they had no reason to believe that the trailer was loaded with drugs on prior occasions. But as the Government argues, it presented sufficient proof for a jury to find by a preponderance of the evidence that both Edica and Zonia had towed the trailer across the border and through the checkpoint, and "the pertinent conditional facts in this case do not include whether the [trailer] contained [marijuana]." Id. The extrinsic evidence of the defendants' prior travel with the trailer—regardless of whether it was loaded with marijuana on each occasion—contributed "to a showing of knowledge and intent through demonstration of a modus operandi." Id. The modus operandi evidence was relevant because it tended to show that Edica and Zonia lied to the ICE agents about their relationship with Pancho, that this was not an isolated incident in which they borrowed the trailer from Pancho, and that Edica was not "merely present" but was a regular and willing participant in hauling the trailer.

### 2. Probative Value versus Prejudicial Effect

We proceed to the second prong of the Beechum test: whether the probative value of the extrinsic evidence substantially outweighs its potential for prejudice. Probative value "is not an absolute; it must be determined with regard to the extent to which the defendant's unlawful intent is established by other evidence, stipulation, or inference. It is the incremental probity of the evidence

that is to be balanced against its potential for undue prejudice." Beechum, 582 F.2d at 914. Thus, probative value is determined in reference to the "necessity" for the extrinsic evidence. Id. at n.18.

The district court did not abuse its discretion in finding that the probative value of the evidence of Edica and Zonia's prior crossings with the trailer were not substantially outweighed by its possible prejudicial effects. The Government alleged and was required to prove beyond a reasonable doubt that Edica and Zonia were intentional participants in the trafficking conspiracy, and that they knowingly possessed with intent to distribute and imported the marijuana. By pleading not guilty, Edica and Zonia both placed their intent at issue. United States v. Duffaut, 314 F.3d 203, 209 (5th Cir. 2002). Under Beechum, probative value is augmented if there is slight direct evidence. 582 F.2d at 914; see Williams, 900 F.2d at 827 ("The very limited evidence the government could thus adduce on the issues of knowledge and intent increases the incremental probity of the extrinsic evidence.") Here, the probative value of the extrinsic offense evidence was relatively great because there was slight direct evidence. Edica's specific defense was that she was merely present; Zonia's was that she did not know the marijuana was in the trailer. Without admission of the extrinsic evidence in the instant case, the Government's evidence would be limited to a showing that Edica and Zonia towed a borrowed trailer across the border with marijuana hidden in it, and their explanations regarding borrowing the trailer were confused and contradictory. Other than the testimony of the CBP officers and ICE agents regarding their contradictory stories, the admitted evidence shed little light on Edica and Zonia's intent.

Additionally, the district court properly instructed the jury that it could not use evidence of the prior crossings in deciding if the defendants were guilty of the charged offenses, and could consider that evidence only for the limited purposes of determining whether the defendants "had the state of mind or intent

to commit the crime charged in the indictment, whether the defendant acted according to a plan or in preparation for commission of a crime, or whether the defendant committed the acts for which he or she is on trial by accident or mistake." See, e.g., United States v. Peterson, 244 F.3d 385, 392 (5th Cir. 2001) (holding that a limiting instruction given at the conclusion of trial mitigated prejudice from 404(b) evidence).

We therefore hold that the district court did not abuse its discretion by admitting evidence of Edica and Zonia's prior border and checkpoint crossings towing the trailer.

C. Sentencing Enhancement for Drugs Estimated to Have Been Smuggled on Prior Crossings

Edica and Zonia argue that the district court erred in sentencing them based on an amount of marijuana not proven in court and arrived at on the basis of pure speculation. The Government asserts that the court's conclusion that Zonia and Edica were part of an ongoing marijuana trafficking operation is plausible; prior trafficking by them was more likely than not to have occurred.

This court reviews the district court's sentencing decisions for reasonableness under an abuse of discretion standard. Gall v. United States, 552 U.S. 38, 50 (2007). The "district court's interpretation or application of the Sentencing Guidelines is reviewed de novo, and its factual findings . . . are reviewed for clear error. There is no clear error if the district court's finding is plausible in light of the record as a whole." United States v. Cisneros-Gutierrez, 517 F.3d 751, 764 (5th Cir. 2008) (internal quotation marks and citation omitted). Remand is required if such an error occurred "unless the proponent of the sentence establishes that the error 'did not affect the district court's selection of the sentence imposed.'" United States v. Delgado-Martinez, 564 F.3d 750, 753 (5th Cir. 2009).

This court has "repeatedly held that a district court may find the facts relevant to a defendant's Guidelines calculation by a preponderance of the evidence," and has rejected arguments that relevant conduct should be determined under a standard greater than a preponderance of the evidence. United States v. Scroggins, 485 F.3d 824, 834 (5th Cir. 2007). "The district court's calculation of the quantity of drugs involved in an offense is a factual determination." United States v. Betancourt, 422 F.3d 240, 246 (5th Cir. 2005). (quoting United States v. Alford, 142 F.3d 825, 831 (5th Cir. 1998)).

The Pre-Sentence Report noted that the "offense conduct" involved 121.24 kilograms of marijuana seized from the trailer being towed by Zonia's vehicle. This would have resulted in a base offense level of 26, because the offense involved at least 100 kilograms but less than 400 kilograms of marijuana. U.S.S.G. § 2D1.1(c)(7).[3] However, the probation officer determined that the defendants should be held responsible for a total of 1,561.27 kilograms based on both the offense conduct and their relevant conduct, resulting in a base offense level of 32. The probation officer relied on the evidence that Zonia drove her vehicle, towing the empty trailer, through the Border Patrol Checkpoint on Interstate Highway 35, on six separate dates between September 2007 and April 2008 and then drove her vehicle without the trailer back to Laredo on the same or following dates. Similarly, the border cameras recorded Edica's vehicle, towing the empty trailer, passing through the Checkpoint on six separate dates and then returning to Laredo without the trailer on the same or the following dates. The probation officer concluded:

> Since the modus operandi was similar to the instant offense, the defendants made twelve successful trips north of Laredo, Texas, and on each trip they delivered 120 kilograms of marijuana. Therefore, they are held responsible for an additional 1,440 kilograms of marijuana for a total of 1,561.24 kilograms of marijuana.

---

[3] The 2007 edition of the Sentencing Guidelines was used in this case.

With a total offense level of 32, Edica's advisory guidelines range was 121 to 155 months. See U.S.S.G. Ch. 5, Pt. A, Sentencing Table. With a total offense level of 34, Zonia's advisory range was 151 to 188 months. Id.

The district court found the amount of marijuana attributed by the Pre-Sentence Report troubling. The court stated on the record that defendants "clearly ha[d] access to some group or organization that's moving a lot a marijuana" and found that "the strong preponderance of the evidence—which simply means it's more likely true than not . . . [was] that [the defendants] have been moving marijuana [ ] as a joint operation, for a good while." However, the court declined to "make the quantum leap that each trip was a smuggling trip of this amount of marijuana." On that basis, the court placed the defendants' base offense level at 28, "somewhere more than 400 kilos, but less than 700."

The district court then calculated that this base offense level gave Zonia a total offense level of 30. Because she had no criminal history points, this resulted in a guidelines range of 97 to 121 months. See U.S.S.G. Ch. 5, Pt. A, Sentencing Table. The court sentenced Zonia at the low end of the resulting range to 97 months. See U.S.S.G. Ch. 5, Pt. A, Sentencing Table. Edica's total offense level was 28. Id. She had no criminal history points, resulting in a guidelines range of 78-97 months. See U.S.S.G. Ch. 5, Pt. A, Sentencing Table. The court sentenced her to 86 months.

The base offense level for unlawful importing and possession of drugs is determined by the quantity of drugs involved. See § 2D1.1(a)(3). In determining a defendant's base offense level, the district court may consider drug quantities not specified in the count of conviction if they are part of the defendant's relevant conduct. § 2D1.1 cmt. n.12. Relevant conduct includes all acts and omissions "that were part of the same course of conduct or common scheme or plan as the offense of conviction." § 1B1.3(a)(2). When an amount of drugs seized "does not reflect the scale of the offense, the court shall approximate the

quantity of the controlled substance." § 2D1.1 cmt. n.12. Drug estimates may be calculated based on extrapolating from "any information that has sufficient indicia of reliability to support its probable accuracy . . . even hearsay." United States v. Valdez, 453 F.3d 252, 267 (5th Cir. 2006).

In this case, the Government presented photographic evidence that Edica and Zonia together had previously transported the same trailer via the same route on numerous prior occasions, using either Edica or Zonia's vehicle. The district court also possessed the following information at the time of sentencing: Edica and Zonia had both been found guilty by a jury, implicitly rejecting Zonia's contradictory testimony that she did not know the marijuana was concealed in the trailer; border agents discovered that all ten of the planks of the homemade trailer had been carefully hollowed out and stuffed full with 120 kilogram bundles of marijuana; after first telling the agents a lie, Edica eventually admitted that she had agreed to accompany the trailer into the United States, that she knew it contained narcotics, and that she was going to be paid some $2,000 to $3,000; and Zonia had told five different versions of the events of that day and provided various accounts of her relationship with Pancho.

Given the totality of the record in this case, including the persuasive evidence of a modus operandi, the district court's finding that Zonia and Edica were part of an ongoing marijuana trafficking operation is "plausible in light of the record as a whole," and we therefore affirm. Cisneros-Gutierrez, 517 F.3d at 764.

### III. CONCLUSION

For the reasons discussed above, we AFFIRM the convictions and the sentences for both defendants.